## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Sumner Regional Health Systems, Inc., *et al.*[1] | ) Case No. 10-_____ (   ) |
|  | ) |
|  | ) Joint Administration Requested |
| Debtors. | ) |
|  | ) |

## MOTION OF DEBTORS FOR ORDERS (I) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) GRANTING OTHER RELIEF, AND (IV) SCHEDULING A FINAL HEARING

Sumner Regional Health Systems, Inc. and its affiliated debtors in the above captioned chapter 11 cases, as debtors-in-possession (collectively, the "Debtors"), respectfully represent:

### I.      SUMMARY OF RELIEF REQUESTED HEREIN

1.      By this motion (the "Motion"), the Debtors request entry of an interim order substantially in the form annexed hereto as Exhibit A (the "Interim Order") and thereafter a final order (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders") authorizing, on an interim and permanent basis, the Debtors to use as cash collateral pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) any Gross Receipts, as defined below, in accordance with the budget annexed as Exhibit A to the Interim Order, scheduling a final hearing on this Motion (the "Final Hearing") to consider entry of a Final Order

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sumner Regional Health Systems, Inc. (3738), Trousdale Medical Center, Inc. (5666), Frank T. Rutherford Memorial Hospital, Inc. (8987), SRHS Holdings, LLC (2680), Sumner Homecare and Hospice, LLC (4324), Family Wellness Group of Middle Tennessee, LLC (1860) and ClinicCare, LLC (6783).

approving the use of cash collateral and provision of adequate protection, and establishing notice procedures in respect of the Final Hearing.

2.      The Debtors respectfully submit that the requested relief is critical to their ability to continue providing competent medical care necessary for the preservation of the health, welfare and safety of their patients as they navigate the Chapter 11 process and conduct their 363 sale process, thereby preserving and protecting the going concern value of their assets and businesses for the benefit of their stakeholders.  As discussed more fully below, without the use of cash collateral, the Debtors would be unable to sustain business operations, resulting in immediate and irreparable harm to the Debtors' creditors and estates as the Debtors would be compelled to liquidate their assets at a substantially reduced price, as opposed to the sale process currently contemplated.

3.      The factual background relating to the Debtors' commencement of these Chapter 11 cases is set forth in detail in the Affidavit of Waite Popejoy, the Chief Restructuring Officer of Sumner Regional Health Systems, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "Popejoy Affidavit") filed contemporaneously herewith and incorporated herein by reference.

## II.      JURISDICTION

4.      The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) in that it is a matter concerning the administration of the Debtors' estates.  Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      BACKGROUND

5.    The Debtor Sumner Regional Health Systems, Inc. ("SRHS"), formed in Tennessee in 1994, is the nonprofit parent corporation of an integrated healthcare system (the "System") headquartered in Gallatin, Tennessee, which provides acute care and skilled nursing services to eleven counties in central Tennessee and southern Kentucky.  Specialty services provided by the System include surgical services, cardiovascular services, cancer services, orthopedic services, emergency medicine, and wound care.  The Debtors own and/or operate, among other businesses and assets, four acute care hospital facilities (collectively, the "Hospitals"), a provider of home health, hospice and palliative care services, a family physician group, and several medical office and outpatient facilities.

6.    SRHS owns and operates Sumner Regional Medical Center ("Sumner Regional"), the System's flagship and largest hospital, which is an acute care facility in Gallatin that provides certain tertiary (i.e., specialized consultative) services.  SRHS acquired the Debtor Trousdale Medical Center, Inc. ("Trousdale Hospital") in 2000.  SRHS acquired the Debtor Frank T. Rutherford Memorial Hospital, Inc., d/b/a Riverview Regional Medical Center South ("Riverview Hospital South"), in 2004.  SRHS acquired the Debtor SRHS Holdings, LLC, d/b/a Riverview Regional Medical Center North ("Riverview Hospital North"), in 2006.

7.    SRHS owns and operates Sumner Homecare and Hospice, LLC ("Sumner Homecare") and Family Wellness Group of Middle Tennessee, LLC ("Family Wellness Group"), both of which are Debtors in these cases.  Sumner Homecare provides home health, hospice and palliative care services in north-central Tennessee.  Family Wellness Group, a family practice physician group located in Hendersonville, Tennessee, was purchased by SRHS in December 2008.  The Debtor ClinicCare, LLC ("ClinicCare") is a non-operating entity with respect to which activities have been shuttered.

8.    The daily operations of the Debtors are delegated by the SRHS Board of Directors (the "System Board") to its executive management team, which is jointly led by interim management personnel from Navigant Consulting, Inc. and Navigant Capital Advisors, LLC (together, "Navigant") and incumbent SRHS management.

9.    The Debtors have approximately 1,500 employees (the "Employees") and approximately 328 physicians on staff.  There are no unions representing the Employees.

10.    As of March 29, 2010, the Debtors had aggregate assets (at book value) and liabilities on a consolidated, unaudited basis of approximately $212,699,000 and approximately $180,749,000, respectively.  For the fiscal year ended May 31, 2009, the Debtors had revenues of approximately $138,780,000, and incurred a negative change in net assets of approximately $42,405,000.

## IV.    PRE-PETITION FINANCING

11.    In 2007, The Health, Educational and Housing Facilities Board of the County of Sumner, Tennessee (the "Issuer") issued its $150,000,000 Hospital Revenue Refunding Improvement Bonds (Sumner Regional Health Systems, Inc.), Series 2007A (the "Series 2007 Bonds") pursuant to a certain Master Trust Indenture dated as of August 1, 2007 (as amended by a First Supplemental Master Trust Indenture dated as of August 1, 2007 and Second Supplemental Master Trust Indenture dated as of May 28, 2008, the "Master Trust Indenture"), and a certain Bond Trust Indenture dated as of August 1, 2007 (the "2007 Bond Indenture").  In connection with the issuance of the Series 2007 Bonds, SRHS executed, among other documents, a Loan Agreement, dated as of August 1, 2007 (the "2007 Loan Agreement").

12.     In 2008, the Issuer issued its $12,000,000 Hospital Revenue Improvement Bonds (Sumner Regional Health Systems, Inc.), Series 2008 (the "<u>Series 2008 Bonds</u>") pursuant to the Master Trust Indenture, and a certain Bond Trust Indenture dated as of May 28, 2008 (as amended by the First Supplemental Indenture dated as of March 1, 2010, the "<u>2008 Bond Indenture</u>").  In connection with the issuance of the Series 2008 Bonds, SRHS executed, among other documents, a Loan Agreement, dated as of May 28, 2008 (the "<u>2008 Loan Agreement</u>"). The Series 2007 Bonds and Series 2008 Bonds are collectively referred to herein as the "<u>Bonds</u>".

13.     The Bonds are the joint and several obligations of (i) SRHS; (ii) Trousdale Hospital; (iii) Riverview Hospital South; (iv) Riverview Hospital North, and (v) Sumner Homecare.

14.     As security for the Bonds, (i) SRHS, (ii) Trousdale Hospital, (iii) Riverview Hospital South, and (iv) Riverview Hospital North are each a party to a Deed of Trust, Security Agreement and Fixture Filing dated as of August 1, 2007 (the "<u>Deed of Trust</u>").  In addition, SRHS is a party to a Security Agreement dated as of August 1, 2007 (the "<u>Security Agreement</u>").

15.     The Master Trust Indenture, 2007 Bond Indenture, 2007 Loan Agreement, 2008 Bond Indenture, 2008 Loan Agreement, Security Agreement, Deed of Trust, and all other documents associated with the Bonds are referred to herein as the "<u>Bond Documents.</u>"

16.     The Bond Documents grant Wells Fargo Bank, National Association, in its capacity as master trustee and bond trustee (the "<u>Indenture Trustee</u>") the collateral described in the Bond Documents for the benefit of the beneficial holders of the Bonds, including without limitation:

(i) a first priority security interest on "Gross Receipts" as defined in the Bond Documents. As more fully set forth in the Bond Documents, Gross Receipts include: all right, title and interest in its receipts, revenues, income (including investment income) and other money received or receivable from all sources and all rights to receive the same whether in the form of accounts, chattel paper, contract rights, investment property, instruments and general intangibles or other rights now owned or hereafter acquired, whether cash or non-cash (all as defined in Article 9 of the Uniform Commercial Code);[2]

(ii) a first priority security interest in real property of SRHS, Riverview Hospital South, Riverview Hospital North, and Trousdale Hospital; and

(iii) a first priority security interest in personal property of SRHS.

(collectively, the "Pre-Petition Bond Collateral").

17. As of the Petition Date, the amounts due and owing under the Bonds and Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal on the Series 2007 Bonds in the amount of $150,000,000;

(ii) Accrued but unpaid interest on the Series 2007 Bonds in the amount of $4,085,606.63;

(iii) Unpaid principal on the Series 2008 Bonds in the amount of $5,021,251.65; and

(iv) unliquidated, accrued and unpaid fees and expenses of the Indenture Trustee and its counsel incurred through the Petition Date in the approximate amount of $85,000 (the "Prepetition Expense Claim"). Such amounts, when liquidated, shall be in addition to the amount of the Bond Claim.

## V. PROPOSED CASH COLLATERAL USE

18. The Debtors' sale efforts are dependent on this Court's authorization of the use of the Indenture Trustee's Cash Collateral on both an interim and final basis. The use of

---

[2] Gross Receipts exclude gifts, grants, bequests, donations and contributions heretofore or hereafter made, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payments required under the Master Trust Indenture or on the obligations issued pursuant to the Master Trust Indenture.

Cash Collateral is critical to the continued operation of the Debtors' businesses during the sale process. Furthermore, court authorization to use cash collateral will allow the Debtors to continue providing medical services in a safe manner while assisting the Debtors in their efforts to allay the concerns of employees, vendors, and other interested parties regarding the Debtors' ability to meet postpetition obligations on a timely basis. This is a critical component of effectuating the post-petition auction and sale process. Without the use of Cash Collateral, the Debtors would be unable to operate during the period between the date hereof and the consummation of a sale of their assets, thereby destroying the going concern value of their businesses. Such a result would significantly harm all creditors of the Debtors' estates.

19. In the exercise of their business judgment, the Debtors have determined that they can operate postpetition on the Indenture Trustee's cash collateral in accordance with the budget annexed to the Interim Order (the "Budget"). The ability to use Cash Collateral will enable the Debtors to preserve and enhance the value of their businesses and assets for the benefit of all creditors and will provide the Debtors with the opportunity to preserve the value of the estates' assets, sell them as a going concern for maximum value, and develop and confirm a chapter 11 plan.

## VI. THE PROPOSED TERMS OF THE CASH COLLATERAL ORDER

20. The Debtors and the Indenture Trustee have been negotiating the terms pursuant to which the Debtors can use the Cash Collateral on a consensual basis. These

negotiations have resulted in the Interim Order. The principal terms of the Interim Order are summarized below:[3]

      Term. Pursuant to the terms and conditions of the Interim Order, the Debtors are authorized to use Cash Collateral until the occurrence of an Event of Default (as defined below).

      Budget. Use of Cash Collateral shall be limited to the amounts and categories listed on, and in accordance with, the Budget, provided, however, that the Debtors shall not be permitted, on a cumulative basis, to exceed the Budget by more than 15% without the express consent of the Indenture Trustee. Further, the Debtors shall not in any calendar week, exceed the Budget by more than 15% on a cumulative basis. For purposes of calculating compliance with the Budget on a weekly basis, due to the potential for certain timing issues in payments, the "Debt Payments" and "Restructuring Expenses" line items shall be excluded from calculating the variance for any week, but shall be subject to the overall budget (and shall be limited to a 15% variance per line item).

      Exclusions from Cash Collateral. Cash Collateral shall not include any Gross Receipts not derived in the ordinary course of the Debtors' operations nor shall the Debtors be entitled to use any cash, securities or funds on deposit with the Indenture Trustee.

      Prohibited Use of Cash Collateral. Except to the extent set forth below, no proceeds of Cash Collateral shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Pre-Petition Bond Collateral, the Bond Claim or any liens or security interests with respect thereto, or any other rights or interests of the Indenture Trustee therein; (ii) asserting any claims or defenses or causes of action against the Indenture Trustee or any holder of the Bonds or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) preventing, hindering or otherwise delaying the Indenture Trustee's assertion, enforcement or realization on the Pre-Petition Bond Collateral or Post-Petition Bond Collateral; (iv) seeking to modify any of the rights granted to the Indenture Trustee in the Orders; or (v) paying any amounts on account of claims arising before the Petition Date except as authorized by order of the Court. Notwithstanding the foregoing, not more than $10,000 of the Cash Collateral may be made available to reimburse the official committee of unsecured creditors (the "Committee") upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority,

---

[3]     This summary of the Interim Order is intended only to assist the Court in understanding key aspects of the arrangement and is qualified in its entirety by reference to the order. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

perfection and enforceability of the Indenture Trustee's liens in the Pre-Petition Bond Collateral.

Adequate Protection of the Indenture Trustee.  As adequate protection of the interests of the Indenture Trustee against any diminution in value of the interests in the Pre-Petition Bond Collateral as a result of the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Bond Collateral, subordination to the Carve Out, or the imposition of the automatic stay, the Indenture Trustee will receive adequate protection as follows:

Rollover Lien. As additional adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a valid, perfected and enforceable continuing replacement lien and security interest (the "Rollover Lien") to the extent of any diminution in the Pre-Petition Bond Collateral in all assets of each and all of the Debtors existing on or after the Petition Date of the same type as the Pre-Petition Bond Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date to the same extent, validity, perfection, enforceability and priority of the liens and security interests of the Indenture Trustee as of the Petition Date (the "Post-Petition Bond Collateral").  The Rollover Lien shall be subject to only prior valid and perfected liens existing as of the Petition Date.

Supplemental Lien.   As additional adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a valid, perfected and enforceable continuing supplemental lien and security interest (the "Supplemental Lien") to the extent of any diminution in the Pre-Petition Bond Collateral in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof (the "Collateral").  Subject to and upon entry of the Final Order, Collateral shall include any causes of action or proceeds thereof under Sections 544 through 550 and 724(e) of the Bankruptcy Code.  The Supplemental Lien shall be subject to only prior valid and perfected liens existing as of the Petition Date.

Additional Liens.  The adequate protection liens set forth in the Orders shall be in addition to all other rights of the Indenture Trustee, including its liens and security interests in the Pre-Petition Bond Collateral.  With the exception of the Carve-Out, the Rollover Lien and the Supplemental Lien shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in Bankruptcy Code

Section 507(a)(8), (iii) any intercompany or affiliate liens of the Debtors or (iv) subordinated to or made pari passu with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

Adequate Protection Payments to the Indenture Trustee.  In consideration for the use of Cash Collateral, the Debtors shall make adequate protection payments in the amounts and at the times required by the Orders equal to the regularly scheduled, non-default amounts due to be paid by the Debtors under the Bond Documents as they relate to the Bonds, and shall pay any amounts due for the payment of reasonable fees and expenses of the Indenture Trustee and its professionals incurred in connection with the Bonds, including the Prepetition Expense Claim (the "Adequate Protection Payments").  The regularly scheduled, non-default amounts due to be paid under the Bond Documents relating to the Series 2008 Bonds shall be due and payable as and when required by the Bond Documents.  The regularly scheduled, non-default amounts due to be paid under the Bond Documents relating to the Series 2007 Bonds shall be due and payable by the Debtors upon the Closing (defined below).

Superpriority Claim.  As additional adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a super-priority administrative expense claim pursuant to Bankruptcy Code Section 507(b) to the extent of any diminution in the Pre-Petition Bond Collateral against all Collateral, assets of the Debtors' estates and the Debtors' rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Post-Petition Bond Collateral, with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever (the "Superpriority Claims"), including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor, in this Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, provided, however, the superpriority lien and all other claims and interests of the Indenture Trustee shall be subject to and junior to the Carve-Out.

Prosecution of Sale.  As further adequate protection of the Indenture Trustee's interests in the Cash Collateral, and in contemplation for the use of cash collateral, the Debtors have filed on the Petition Date a motion to sell the Business, a motion to approve sale procedures relating to the sale of the Business, and a motion for expedited consideration with respect to the sale procedures (collectively, the "Sale Motion"), and have covenanted to pursue the Sale Motion

in good faith and as promptly as the Court's schedule permits. The order approving the Sale Motion shall provide for the payment of the net proceeds at the Closing for application to the Bond Claim and/or Adequate Protection Payments as described in the Cash Collateral Orders, less amounts set forth in a wind-down budget (including, without limitation, the Carve Out) for anticipated expenses associated with the disposition of the Bankruptcy Cases as approved by the Bankruptcy Court.

Allowance of Claim and Bankruptcy Code Section 506(c) Waiver. Subject to the Committee challenge period, entry of the Interim Order by the Court shall be a conclusive and binding determination on all parties (x) of the amount of the Bond Claim, (y) the Indenture Trustee's right to payment of the Prepetition Expense Claim; and (z) that the Indenture Trustee's security interests in the Pre-Petition Bond Collateral, including, without limitation, the Cash Collateral, have been duly perfected and are in all respects valid and enforceable first priority security interests and liens and not subject to any claim under Bankruptcy Code Section 552(b). Subject to the challenge period, the entry of an order by the Court approving the Motion on a final basis (the "Final Order") shall be a conclusive and binding determination on all parties that the Indenture Trustee's security interests in the Pre-Petition Bond Collateral, including, without limitation, the Cash Collateral are not subject to any claim under Bankruptcy Code Section 506(c).

Financial Information. As additional adequate protection of the Indenture Trustee's security interests in the Cash Collateral, the Debtors shall allow the Indenture Trustee reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct appraisals, analyses and/or audits of the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Indenture Trustee. The Debtors shall provide to the Indenture Trustee periodic financial reports and such other reports and information as described in the Cash Collateral Orders.

Termination of Use of Cash Collateral With Notice.

(a)     The Debtors' authority to use Cash Collateral pursuant to the terms of this Interim Order will terminate without any further action by the Bankruptcy Court five (5) business days after written notification sent by the Indenture Trustee to the Debtors, any Committee (as defined above) appointed in this case, the U.S. Trustee, and all parties filing a notice of appearance herein, of the occurrence and continuation of any of the following (a "Termination Event"):

1     the incurrence by the Debtors of (x) administrative expenses, or any other amounts, of a type not set forth in the Budget, or (y) administrative expenses of the types set forth in the Budget in amounts exceeding the amounts for each type of expense set forth in the Budget, except (a) as otherwise provided in the Orders, and (b) for fees due under 28 U.S.C. §1930;

2	the failure of the Debtors to pay all undisputed administrative expenses in full in accordance with their terms as provided for in the Budget;

3	the failure of the Debtors to timely pay all fees due under 28 U.S.C. §1930;

4	the Debtors' failure to obtain entry of an order on or before May 15, 2010, approving the bidding procedures described in the Sale Motion incorporating the sale process and deadlines set forth in Interim Order or the Debtors' failure to comply with the deadlines so established;

5	the Debtors default or are in breach of any of the terms of the Bond Documents set forth in a schedule attached to the Interim Order; or

6	the Debtors fail to comply with, keep, observe or perform any of their agreements or undertakings under the Interim Order.

(b)	Unless during such five (5) business day period referenced above, the Debtors cure any Termination Event that is curable or obtain an order by this Court determining that the Indenture Trustee is then still receiving adequate protection for purposes of the Bankruptcy Code, (i) the Debtors' authority to use Cash Collateral hereunder shall terminate, (ii) the Indenture Trustee may exercise all rights and options set forth herein exercisable upon the occurrence of a default, and (iii) the Indenture Trustee, upon the expiration of such five (5) business day period shall be automatically relieved of any further stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its pre- and post-petition liens and security interests in the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, all without further order of the Bankruptcy Court.

<u>Termination of Use of Cash Collateral Without Prior Notice</u>. The Debtors' authority to use Cash Collateral will terminate without any further action by the Bankruptcy Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

1	Any Debtor's Chapter 11 case is dismissed or converted to a proceeding under Chapter 7 of the Bankruptcy Code;

2	the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for any Debtor; or (z) the date any Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

3	the Bankruptcy Court suspends any Debtor's bankruptcy case under Section 305 of the Bankruptcy Code;

4       entry of an order confirming a plan in the Bankruptcy Cases;

5       the Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Indenture Trustee;

6       an order is entered in the Bankruptcy Cases over the objection of the Indenture Trustee approving financing pursuant to Section 364 that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Indenture Trustee under this Interim Order;

6       an adversary proceeding or contested matter is commenced by the Debtors challenging the validity, enforceability, priority or extent of the Indenture Trustee's liens or claims;

7       imposition of orders, penalties or fines by any governmental agency or unit which, if not cured promptly, results in the cessation of operations of the Debtors; or

8       the Court fails to enter a Final Order on or before May 25, 2010.

Upon the occurrence of a Termination Event described herein, the Debtors' authority to use Cash Collateral terminates, the Indenture Trustee may exercise all rights and options set forth in the Interim Order exercisable upon the occurrence of a default, and the Indenture Trustee shall be automatically relieved of any further stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its pre- and post-petition liens and security interests in the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, all without further order of the Bankruptcy Court.

Release. The Debtors waive, release and discharge the Indenture Trustee and all holders of the Bonds from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Bonds and the Bond Documents. Further, the Debtors waive any and all rights to object to or contest the amount of the Bond Claim or the Indenture Trustee's security interests in the Pre-Petition Bond Collateral and agree that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

Deemed Request for Stay Relief. The Interim Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Pre-Petition Bond Collateral and for adequate protection for the use of cash collateral as of the Petition Date.

No Charge on Collateral; Carve Out. In part in consideration of the Debtors' acknowledgement of the debt due and owing and the Debtors' waiver of any claims under section 506(c) of the Bankruptcy Code, the Indenture Trustee consents to a carve out for certain expenses and professional fees incurred during the pendency of this bankruptcy case which shall be superior in all instances to the liens and claims of the Indenture Trustee and all other parties (the "Carve Out"). For purposes hereof, the "Carve Out" means fees and expenses of professionals retained by the Debtors or the Committee (as defined below) in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (a) incurred or accrued prior to a Termination Event (whether paid or unpaid); (b) provided for under the Budget; and (c) previously or subsequently allowed by court order; plus (ii) $500,000, plus (iii) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of the Bankruptcy Court. Nothing herein shall constitute a waiver of any right of the Indenture Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid. The entry of a Final Order shall be a conclusive and binding determination on all parties that except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee or the Pre-Petition Bond Collateral or the Post-Petition Bond Collateral under Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

Modification of Stay. The automatic stay imposed by virtue of Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Indenture Trustee to: (i) receive payments to be made by the Debtors to the Indenture Trustee and the payment of amounts due to the holders of the Bonds, (ii) apply, allocate or pay from any of the funds or accounts maintained by the Indenture Trustee in accordance with the terms of the Bond Documents, (iii) pay all fees and expenses of the Indenture Trustee and its professionals by the Debtors; and (iv) take any action specifically authorized or contemplated by the Interim Order.

Challenge Period. The Interim Order is without prejudice to the rights of any Committee to, on behalf of the Debtors' estates, challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim or the pre-petition security interests of the Indenture Trustee, so long as any such challenge is made on or before 60 days after the commencement of these Bankruptcy Cases, after which time all such challenges shall be deemed finally and conclusively barred.

## VII. BASIS FOR APPROVAL OF THE USE OF CASH COLLATERAL

21. As described above, it is essential to the success of the Debtors' chapter 11 cases that the Debtors immediately obtain authority to use Cash Collateral. The preservation of estate assets and the Debtors' ability to maximize the value of their estates thus depends heavily

upon expeditiously obtaining approval of the usage of Cash Collateral and the related relief requested herein.

22.     The Debtors' use of Cash Collateral, including the Debtors' proposal to provide the adequate protection referenced herein, and as more fully set forth in the Interim Order, is authorized pursuant to section 363(c) of the Bankruptcy Code.  Section 363(c) of the Bankruptcy Code provides as follows:

> (c)     (1)     If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
>
> (2)     The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless —
>
> (A)     each entity that has an interest in such cash collateral consents; or
>
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c).  Section 363(e) of the Bankruptcy Code further provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . ."

23.     The Debtors require access to their cash and the proceeds of existing accounts receivable to operate their business and preserve the value of their estates.  These essential items, however, constitute collateral under the Bond Documents and, therefore, may not be used in support of the Debtors' ongoing activities absent compliance with section 363 of the Bankruptcy Code.

24.     The proposed Interim Order, if approved, will provide the Debtors with the ability to use the Cash Collateral while providing the Indenture Trustee with adequate protection, as contemplated by sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code. Under section 361 of the Bankruptcy Code, adequate protection may be provided by, among other things, periodic cash payments, granting a lienholder an additional or replacement lien and granting other relief to the extent that the usage of the cash collateral results in a decrease in the value of such entity's interest in such property. As discussed above, the proposed Interim Order provides a variety of negotiated provisions to protect the Indenture Trustee against any diminution in value of the Cash Collateral. In addition, in accordance with sections 503(b) and 507(b) of the Bankruptcy Code, the proposed Interim Order provides for a superpriority administrative expense claim to protect the Indenture Trustee if the replacement liens granted by the Cash Collateral Order prove inadequate to secure against any diminution in the value of the Indenture Trustee's interest in the Cash Collateral. Finally, the proposed Cash Collateral Order provides the Indenture Trustee with certain adequate protection payments to further protect the Indenture Trustee against any diminution in value of its interests in the Cash Collateral or other Pre-Petition Bond Collateral.

25.     For several reasons, the Debtors submit that the terms of the Orders are reasonable and beneficial to the Debtors' estates and creditors. First, the Interim Order will permit the Debtors to continue to operate their business under a reasonable budget. Second, the Interim Order preserves the rights of parties with valid interests in the Debtors' assets as of the Petition Date and, in addition, preserves the rights of any official committee of unsecured creditors, or other parties in interest if no creditors' committee is appointed, to challenge the validity, priority and extent of the liens and security interests of the Indenture Trustee in and to

the Collateral during a reasonable review period. Third, the Interim Order's provisions for adequate protection of the interests of the Indenture Trustee in the Cash Collateral are fair and reasonable under the circumstances of these cases. Accordingly, the terms of the Interim Order should be approved in their entirety.

## Request for Authority to Use Cash Collateral Immediately

26.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

27.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an interim hearing and authorize the Debtor to use, on an interim basis, Cash Collateral in accordance with the Budget and the terms and provisions of the Interim Order in order to (i) maintain and finance the ongoing operations of the Debtors and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest.

28.     As noted above, absent the immediate use of Cash Collateral, the Debtors lack funds to operate their business on a day to day basis. Even a temporary inability to access Cash Collateral would cause significant and irreparable harm to the Debtors and their estates. The authorization to use Cash Collateral will provide the necessary assurance to employees and customers of the Debtors' ability to meet their near-term obligations.

## VIII.   NOTICE WITH RESPECT TO EMERGENCY REQUEST FOR CASH COLLATERAL USE AND FINAL HEARING

29.      The Debtors submit that the exigencies of these cases and the Debtors' immediate need for the use of cash collateral do not permit broad notice of the Debtors' request for emergency use of cash collateral pursuant to the Interim Order.  Additionally, as of the date hereof, no statutory creditors' committee has been appointed in these cases.  Therefore, the Debtors have or will give notice of this Motion and the interim relief sought herein, by overnight mail, hand delivery, fax or telephonic notice to (a) the Debtors' twenty (20) largest unsecured creditors (on a consolidated basis); (b) the Debtors' five (5) largest secured creditors (on a consolidated basis); (c) the Office of the United States Trustee for the Middle District of Tennessee; (d) Office of the United States Attorney for the Middle District of Tennessee, Civil Division; (e) United States Department of Justice, (f) the United States Department of Health and Human Services, (g) the Tennessee State Department of Health, (h) the Attorney General of the State of Tennessee, (i) Wells Fargo Bank, National Association as Trustee, and (j) all parties known by the Debtors claiming to have liens on,  or security interests in, or equipment leasing interests in, any of the Collateral (collectively, the "Initial Notice Parties").  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

30.      The Debtors further request that the Court schedule the Final Hearing and authorize them to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to the Initial Notice Parties and (i) any party that has filed prior to such date a request for notices with this Court; (ii) counsel for any official committee(s), if any; (iii) the Securities and Exchange Commission, (iv) the Internal Revenue Service, and (v) the United States Attorney General.

31.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the Interim Order authorizing, <u>inter alia</u>, the Debtors to use cash collateral on an emergency interim basis through the conclusion of the Final Hearing, (ii) enter a Final Order authorizing the Debtors to use cash collateral on a permanent basis, (iii) grant all related relief requested in this Motion, and (iv) grant the Debtors such other or further relief as may be just and proper.

Dated:  April 30, 2010

    */s/ Robert A. Guy, Jr.*
FROST BROWN TODD LLC
Robert A. Guy, Jr., Esq.
424 Church Street, Suite 1600
Nashville, Tennessee 37219
Telephone: 615.251.5550
Facsimile: 615.251.5551
E-mail: bguy@fbtlaw.com

    *- and -*

Ronald E. Gold, Esq.*
Joseph B. Wells, Esq.*
201 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com

    *- and -*

PROSKAUER ROSE LLP
Jeff J. Marwil, Esq.*
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  312-962-3550

    *- and -*

Jeffrey W. Levitan, Esq.*
Adam T. Berkowitz, Esq.*
1585 Broadway
New York, NY  10036-8299
Telephone:  212-969-3000

**Pro Hac Vice* Motion Pending

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

```
------------------------------------------------------------X
                                         :
In re:                                   :      CHAPTER 11
                                         :
SUMNER REGIONAL                          :      Case No.: 10-_____
HEALTH SYSTEMS, INC, et al¹              :
                           Debtors.      :      (joint administration)
                                         :
------------------------------------------------------------X
```

## INTERIM ORDER REGARDING USE OF CASH COLLATERAL
## AND ADEQUATE PROTECTION

This Interim Order Regarding Use of Cash Collateral and Adequate Protection (this "Interim Order") is entered upon the Motion of Debtors for Orders (I) Authorizing Debtors to Utilize Cash Collateral, (II) Granting Adequate Proteciton, (III) Granting Other Relief, and (IV) Scheduling a Final Hearing (the "Motion") and upon terms agreed to by and among the Debtors, and Wells Fargo Bank, National Association, not individually but as successor master trustee and successor bond trustee for the bonds described more fully below. In its

---

¹ The Debtors in these Chapter 11 cases are Sumner Regional Health Systems, Inc. (d/b/a Sumner Regional Medical Center), Trousdale Medical Center, Inc. (d/b/a Trousdale Hospital), Frank T. Rutherford Memorial Hospital, Inc. (d/b/a Riverview Regional Medical Center South), SRHS Holdings, LLC (d/b/a Riverview Regional Medical Center North), Sumner Homecare and Hospice, LLC, Family Wellness Group of Middle Tennessee, LLC, and ClinicCare, LLC (each a "Debtor" and collectively, the "Debtors").

capacity as master trustee and bond trustee, Wells Fargo Bank, National Association is referred to herein as the "Indenture Trustee".

Upon the terms of the Motion, the stipulation, acknowledgement and agreement of the Debtors and the Indenture Trustee, and the statements of the parties and their respective counsel at the interim hearing on the use of Cash Collateral, and the record of these proceedings, the Court makes the following findings of fact and rulings of law:

**The Debtors' Chapter 11 Cases; Procedural Background; Jurisdiction; Notice**

A.      On April 30, 2010 (the "Petition Date"), each Debtor filed a voluntary petition for relief with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Cases").  Since the Petition Date, the Debtors have operated their businesses and managed their property as a debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[2]

B.      The Debtors are the owners and/or operators of various health-care related ventures and assets, including without limitation a licensed acute care hospital facility known as Sumner Regional Medical Center located in Gallatin, Tennessee (the "Business").

C.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

D.      The Debtors have properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362 and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001[3], and Local Bankruptcy Rules 2001-1, 2002-2 and 9013-1, which notice was sent to among others: (a) the Debtors' twenty (20) largest unsecured

---

[2]      As used herein, 11 U.S.C. § 101 et seq. is referred to as the "Bankruptcy Code."

[3]      As used herein, the Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

creditors (on a consolidated basis); (b) the Debtors' five (5) largest secured creditors (on a consolidated basis); (c) the Office of the United States Trustee for the Middle District of Tennessee; (d) Office of the United States Attorney for the Middle District of Tennessee, Civil Division; (e) United States Department of Justice, (f) the United States Department of Health and Human Services, (g) the Tennessee State Department of Health, (h) the Attorney General of the State of Tennessee, (i) all parties known by the Debtors claiming to have liens on, or security interests in, or equipment leasing interests in, any of the Collateral, and Wells Fargo Bank, N.A. as Trustee (the "Initial Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

**The Debtors' Secured Bond Obligations**

E.      In 2007, The Health, Educational and Housing Facilities Board of the County of Sumner, Tennessee (the "Issuer") issued its $150,000,000 Hospital Revenue Refunding Improvement Bonds (Sumner Regional Health Systems, Inc.), Series 2007A (the "Series 2007 Bonds") pursuant to a certain Master Trust Indenture dated as of August 1, 2007 (as amended by a First Supplemental Master Trust Indenture dated as of August 1, 2007 and Second Supplemental Master Trust Indenture dated as of May 28, 2008, the "Master Trust Indenture"), and a certain Bond Trust Indenture dated as of August 1, 2007 (the "2007 Bond Indenture"). In connection with the issuance of the Series 2007 Bonds, Debtor Sumner Regional Health Systems, Inc. executed, among other documents, a Loan Agreement, dated as of August 1, 2007 (the "2007 Loan Agreement").

F.      In 2008, the Issuer issued its $12,000,000 Hospital Revenue Improvement Bonds (Sumner Regional Health Systems, Inc.), Series 2008 (the "Series 2008 Bonds")

pursuant to the Master Trust Indenture, and a certain Bond Trust Indenture dated as of May 28, 2008 (as amended by the First Supplemental Indenture dated as of March 1, 2010, the "2008 Bond Indenture"). In connection with the issuance of the Series 2008 Bonds, Debtor Sumner Regional Health Systems, Inc. executed, among other documents, a Loan Agreement, dated as of May 28, 2008 (the "2008 Loan Agreement"). The Series 2007 Bonds and Series 2008 Bonds are collectively referred to in this Interim Order as the "Bonds".

G.      The Bonds are the joint and several obligations of (i) Sumner Regional Health Systems, Inc.; (ii) Trousdale Medical Center, Inc.; (iii) Frank T. Rutherford Memorial Hospital, Inc.; (iv) SRHS Holdings, LLC, and (v) Sumner Homecare and Hospice, LLC.

H.      As security for the Bonds (i) Sumner Regional Health Systems, Inc.; (ii) Trousdale Medical Centre, Inc.; (iii) Frank T. Rutherford Memorial Hospital, Inc.; and (iv) SRHS Holdings, LLC are each a party to a Deed of Trust, Security Agreement and Fixture Filing dated as of August 1, 2007 (the "Deed of Trust"). In addition, Sumer Regional Health Systems, Inc. is a party to a Security Agreement dated as of August 1, 2007 (the "Security Agreement").

I.      The Master Trust Indenture, 2007 Bond Indenture, 2007 Loan Agreement, 2008 Bond Indenture, 2008 Loan Agreement, Security Agreement, Deed of Trust, and all other documents associated with the Bonds are referred to as the "Bond Documents" for purposes of this Interim Order.

J.      The Bond Documents grant the Indenture Trustee the collateral described in the Bond Documents for the benefit of the beneficial holders of the Bonds, including without limitation:

(i)     a first priority security interest on "Gross Receipts" as defined in the Bond Documents.  As more fully set forth in the Bond Documents, Gross Receipts include:  all right, title and interest in its receipts, revenues, income (including investment income) and other money received or receivable from all sources and all rights to receive the same whether in the form of accounts, chattel paper, contract rights, investment property, instruments and general intangibles or other rights now owned or hereafter acquired, whether cash or non-cash (all as defined in Article 9 of the Uniform Commercial Code);[4]

(ii)    a first priority security interest in real property of Sumner Regional Health Systems, Inc. Frank T. Rutherford Memorial Hospital, Inc., SRHS Holdings, LLC, and Trousdale Medical Center, Inc.; and

(iii)   a first priority security interest in personal property of Sumner Regional Health Systems, Inc.

(collectively, the "Pre-Petition Bond Collateral").

**The Bond Claim**

K.      As of the Petition Date, the amounts due and owing under the Bonds and Bond Documents are as follows (collectively, the "Bond Claim"):

(i)     Unpaid principal on the Series 2007 Bonds in the amount of $150,000,000;

(ii)    Accrued but unpaid interests on the Series 2007 Bonds in the amount of $4,085,606.63;

(iii)   Unpaid principal on the Series 2008 Bonds in the amount of $5,021,251.65; and

(iv)    unliquidated, accrued and unpaid fees and expenses of the Indenture Trustee and its counsel incurred through the Petition Date in the approximate amount of $85,000 (the "Prepetition Expense Claim").  Such amounts, when liquidated, shall be an addition to the amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

L.      The Debtors have requested the use of Cash Collateral (as defined below) in connection with the Bankruptcy Cases to preserve the value of the Business.  The Indenture

---

[4]     Gross Receipts exclude gifts, grants, bequests, donations and contributions heretofore or hereafter made, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payments required under the Master Trust Indenture or on the obligations issued pursuant to the Master Trust Indenture.

Trustee does not consent to the use of cash collateral except upon the terms and conditions of this Interim Order.

M.      Without the use of cash collateral on an interim basis, the Debtors would suffer immediate and irreparable harm and would likely be required to cease operations immediately or, at a minimum, would disrupt the Debtors as a going concern, would eliminate or significantly decrease the likelihood of a successful orderly reorganization or disposition of the Debtors' assets in Chapter 11, and would not be in the best interests of the Debtors, their respective estates or creditors.  In lieu of giving the Indenture Trustee relief from stay, the Debtors wish to provide adequate protection of the liens and security interests of the Indenture Trustee in cash collateral, as set forth in this Interim Order.

N.      The Debtors have acknowledged and admitted that the Bond Claim is secured by valid, enforceable, duly perfected liens on and security interests in the Pre-Petition Bond Collateral pursuant to the Bonds Documents, not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

O.      The terms of this Interim Order are fair and commercially reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

P.      To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, are

overruled on the merits. The requirements of Bankruptcy Rule 4001(b)(2) are satisfied with respect to the use of cash collateral on an interim and preliminary basis pending a final hearing on the Motion.

2. <u>Authorization to Use Cash Collateral</u>. Until the occurrence of a Termination Event (as defined below), the Debtors are authorized to use as cash collateral (as defined in Section 363 of the Bankruptcy Code) any Gross Receipts as described in the Bond Documents (the "<u>Cash Collateral</u>"), <u>provided</u>, <u>however</u>, that such use of Cash Collateral shall be limited solely to the amounts and categories listed on, and in accordance with, the Budget attached hereto as Schedule A (the "<u>Budget</u>"); <u>provided</u> <u>further</u> that the Debtors shall not be permitted, on a cumulative basis, to exceed the Budget by more than 15% without the express consent of the Indenture Trustee. Further, the Debtors shall not in any calendar week, exceed the Budget by more than 15% on a cumulative basis. For purposes of calculating compliance with the Budget on a weekly basis, due to the potential for certain timing issues in payments, the "Debt Payments" and "Restructuring Expenses" line items shall be excluded from calculating the variance for any week, but shall be subject to the overall budget (and shall be limited to a 15% variance per line item).

3. <u>Exclusion from Cash Collateral</u>. Cash Collateral shall not include any Gross Receipts not derived in the ordinary course of the Debtors' operations. Nothing in this Interim Order or any subsequent order concerning the extension of the use of cash collateral by the Debtors shall entitle the Debtors to use any cash, securities or funds on deposit with the Indenture Trustee (the "<u>Bond Funds</u>") and no lien or other interest may be granted in the Bond Funds to any third party.

4.      <u>Prohibited Use of Cash Collateral</u>.   Except as expressly provided in this Section 4, no proceeds of Cash Collateral shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Pre-Petition Bond Collateral, the Bond Claim or any liens or security interests with respect thereto, or any other rights or interests of the Indenture Trustee therein; (ii) asserting any claims or defenses or causes of action against the Indenture Trustee or any holder of the Bonds or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) preventing, hindering or otherwise delaying the Indenture Trustee's assertion, enforcement or realization on the Pre-Petition Bond Collateral or Post-Petition Bond Collateral; (iv) seeking to modify any of the rights granted to the Indenture Trustee hereunder; or (v) paying any amounts on account of claims arising before the Petition Date except as set forth herein.   Notwithstanding the foregoing, not more than $10,000 of the Cash Collateral may be made available to reimburse the Committee (as defined herein) upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection and enforceability of the Indenture Trustee's liens in the Pre-Petition Bond Collateral.

5.      <u>Amendment or Extension of Use of Order</u>.   This Interim Order shall not be amended without the express written consent of the Indenture Trustee, which shall be at its sole discretion.   Notice of any such amendment to this Interim Order shall be filed with the Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b).

6. <u>Amendment or Extension of Use of Cash Collateral</u>.  The Budget shall not be amended without the express written consent of the Indenture Trustee, which consent shall not be unreasonably withheld.  Any amendment or modification of the Budget shall not require approval by the Bankruptcy Court to be effective.  Notice of any such amendment shall be filed with the Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b).

7. <u>Rollover Lien</u>.  As adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a valid, perfected and enforceable continuing replacement lien and security interest (the "<u>Rollover Lien</u>") to the extent of any diminution in the Pre-Petition Bond Collateral in all assets of each and all of the Debtors existing on or after the Petition Date of the same type as the Pre-Petition Bond Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date to the same extent, validity, perfection, enforceability and priority of the liens and security interests of the Indenture Trustee as of the Petition Date (the "<u>Post Petition Bond Collateral</u>").  The Rollover Lien shall be subject to only prior valid and perfected liens existing as of the Petition Date.

8. <u>Supplemental Lien</u>.  As additional adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a valid, perfected and enforceable continuing supplemental lien and security interest (the "<u>Supplemental Lien</u>") to the extent of any diminution in the Pre-Petition Bond Collateral in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof (the "<u>Collateral</u>").  Subject to

and upon entry of the Final Order (defined below), Collateral shall include any causes of action or proceeds thereof under Sections 544 through 550 and 724(e) of the Bankruptcy Code. The Supplemental Lien shall be subject to only prior valid and perfected liens existing as of the Petition Date.

9.      Additional Liens. The adequate protection liens set forth in this Interim Order shall be in addition to all other rights of the Indenture Trustee, including its liens and security interests in the Pre-Petition Bond Collateral. With the exception of the Carve Out (as defined below), the Rollover Lien and the Supplemental Lien shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in Bankruptcy Codes Section 507(a)(8), (iii) any intercompany or affiliate liens of the Debtors or (iv) subordinated to or made pari passu with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

10.      No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Rollover Lien and Supplemental Lien granted to the Indenture Trustee, whether or not the Indenture Trustee elects to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; provided, however, upon the request of the Indenture

Trustee, the Debtors shall execute such other documents as may be reasonably requested to evidence and perfect such liens, and the Indenture Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtors have real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of its liens and security interests. No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense reduction, setoff, recoupment or counterclaim.

11. <u>Adequate Protection Payments to the Indenture Trustee</u>. In consideration for the use of Cash Collateral, the Debtors shall make adequate protection payments in the amounts and at the times required by this Section 11 equal to the regularly scheduled, non-default amounts due to be paid by the Debtors under the Bond Documents as they relate to the Bonds, and shall pay any amounts due for the payment of reasonable fees and expenses of the Indenture Trustee and its professionals incurred in connection with the Bonds, including the Prepetition Expense Claim (the "<u>Adequate Protection Payments</u>"). The regularly scheduled, non-default amounts due to be paid under the Bond Documents relating to the Series 2008 Bonds shall be due and payable as and when required by the Bond Documents. The regularly scheduled, non-default amounts due to be paid under the Bond Documents relating to the Series 2007 Bonds shall be due and payable by the Debtors upon the Closing (defined below). The fees and expenses incurred by the Indenture Trustee including the Indenture Trustee's own fees and expenses and those of its professionals shall not be subject to the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code and shall be paid by the Debtors

without further order of the Court within five (5) business days of delivery to the Debtors of any invoices therefor. Any invoice contemplated by this Section 11 may be redacted with respect to privileged matters.

12. **Superpriority Claim**. As additional adequate protection and in consideration for the use of Cash Collateral by the Debtors, the Indenture Trustee shall have a super-priority administrative expense claim pursuant to Bankruptcy Code Section 507(b) to the extent of any diminution in the Pre-Petition Bond Collateral against all Collateral, assets of the Debtors' estates and the Debtors' rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Post-Petition Bond Collateral, with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever (the "Superpriority Claims"), including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor, in this Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof; provided, however, the superpriority lien and all other claims and interests of the Indenture Trustee shall be subject to and junior to the Carve-Out.

13. <u>Prosecution of Sale</u>.  As further adequate protection of the Indenture Trustee's interests in the Cash Collateral, and in contemplation for the use of cash collateral, the Debtors have filed on the Petition Date a motion to sell the Business, a motion to approve sale procedures relating to the sale of the Business, and a motion for expedited consideration with respect to the sale procedures (collectively, the "<u>Sale Motion</u>"), and have covenanted to pursue the Sale Motion in good faith and as promptly as the Court's schedule permits.  The Sale Motion shall request, without limitation (a) that an order be entered approving bid procedures reasonably acceptable to the Indenture Trustee; (b) that the Court impose a deadline for objections to the proposed sale and for competing bids for the Business not later than June 11, 2010; (c) that an auction be concluded not later than June 16, 2010; and (d) that a hearing to confirm the sale of the Business commence not later than June 18, 2010.  The Sale Motion shall also require the successful bidder for the Business to consummate its purchase not later than June 30, 2010 (the "<u>Closing</u>").  The order approving the Sale Motion shall provide for the payment of the proceeds at the Closing for application to the Bond Claim and/or Adequate Protection Payments as described in this Interim Order, less amounts set forth in a wind-down budget (including without limitation the Carve-Out) for anticipated expenses associated with the disposition of the Bankruptcy Cases as approved by the Bankruptcy Court.  For the avoidance of doubt, the Indenture Trustee has reserved all rights to object to the wind-down budget described in this Section 13.

14. <u>Allowance of Claim and Bankruptcy Code Section 506(c) Waiver</u>.  Except as set forth in Section 24 below, the entry of this Interim Order by the Court shall be a conclusive and binding determination on all parties (x) of the amount of the Bond Claim, (y) the Indenture Trustee's right to payment of the Prepetition Expense Claim; and (z) that the

Indenture Trustee's security interests in the Pre-Petition Bond Collateral, including, without limitation, the Cash Collateral, have been duly perfected and are in all respects valid and enforceable first priority security interests and liens and not subject to any claim under Bankruptcy Code Section 552(b). The entry of an order by the Court approving the Motion on a final basis (the "Final Order") shall be a conclusive and binding determination on all parties that the Indenture Trustee's security interests in the Pre-Petition Bond Collateral, including, without limitation, the Cash Collateral are not subject to any claim under Bankruptcy Code Section 506(c).

15. Financial Information. As additional adequate protection of the Indenture Trustee's security interests in the Cash Collateral, the Debtors shall allow the Indenture Trustee reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct appraisals, analyses and/or audits of the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Indenture Trustee. From and after the entry of this Interim Order, the Debtors shall provide to the Indenture Trustee on Friday of each week (commencing with the Friday following the Petition Date), a weekly report certified by the Debtors' chief executive officer, chief restructuring officer or chief financial officer indicating all receipts received by and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances from the expenditures and receipts as described in the Budget. The Debtors shall provide to the Indenture Trustee such other reports and information as may be reasonably requested from time to time by the Indenture Trustee, all such reports to be certified by the Debtors' chief financial officer, chief

restructuring officer or chief executive officer (and such reports shall certify that all uses of Cash Collateral shall be itemized and in compliance with the Budget).

16.     Termination of Use of Cash Collateral With Notice.

(a)     The Debtors' authority to use Cash Collateral pursuant to the terms of this Interim Order will terminate without any further action by the Bankruptcy Court five (5) business days after written notification sent by the Indenture Trustee to the Debtors, any Committee (as defined below) appointed in this case, the U.S. Trustee, and all parties filing a notice of appearance herein, of the occurrence of any of the following (a "Termination Event"):

(i)     the incurrence by the Debtors of (x) administrative expenses, or any other amounts, of a type not set forth in the Budget, or (y) administrative expenses of the types set forth in the Budget in amounts exceeding the amounts for each type of expense set forth in the Budget, except (a) as otherwise provided in Section 2, and (b) for fees due under 28 U.S.C. §1930;

(ii)    the failure of the Debtors to pay all undisputed administrative expenses in full in accordance with their terms as provided for in the Budget;

(iii)   the failure of the Debtors to timely pay all fees due under 28 U.S.C. §1930;

(iv)    the Debtors' failure to obtain entry of an order on or before May 15, 2010, approving the bidding procedures described in the Sale Motion incorporating the sale process and deadlines set forth in Section 13 or the Debtors' failure to comply with the deadlines so established;

(v)     the Debtors default or are in breach of any of the terms of the Bond Documents set forth in Schedule 16 attached to this Interim Order; or

(vi)    the Debtors fail to comply with, keep, observe or perform any of their agreements or undertakings under this Interim Order.

(b)     Unless during such five (5) business day period referenced above in Section 16(a), the Debtors cure any Termination Event that is curable or obtain an order by this Court determining that the Indenture Trustee is then still receiving adequate protection for purposes

of the Bankruptcy Code, (i) the Debtors' authority to use Cash Collateral hereunder shall terminate, (ii) the Indenture Trustee may exercise all rights and options set forth herein exercisable upon the occurrence of a default, and (iii) the Indenture Trustee, upon the expiration of such five (5) business day period shall be automatically relieved of any further stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its pre- and post-petition liens and security interests in the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, all without further order of the Bankruptcy Court.

17.     <u>Termination of Use of Cash Collateral Without Prior Notice</u>.

(a)     The Debtors' authority to use Cash Collateral will terminate without any further action by the Bankruptcy Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

(i)      Any Debtor's Chapter 11 case is dismissed or converted to a proceeding under Chapter 7 of the Bankruptcy Code;

(ii)     the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for any Debtor; or (z) the date any Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(iii)    the Bankruptcy Court suspends any Debtor's bankruptcy case under Section 305 of the Bankruptcy Code;

(iv)     entry of an order confirming of plan in the Bankruptcy Cases;

(v)      this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Indenture Trustee;

(vi)     an order is entered in the Bankruptcy Cases over the objection of the Indenture Trustee approving financing pursuant to Section 364 that would grant an additional security interests or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Indenture Trustee under this Interim Order;

(vii)    an adversary proceeding or contested matter is commenced by the Debtors challenging the validity, enforceability, priority or extent of the Indenture Trustee's liens or claims;

(viii)    imposition of orders, penalties or fines by any governmental agency or unit which, if not cured promptly, results in the cessation of operations of the Debtors; or

(ix)    the Court fails to enter a Final Order on or before May 25, 2010.

(b)    Upon the occurrence of a Termination Event described in this Section 17, the Debtors' authority to use Cash Collateral hereunder shall terminate, the Indenture Trustee may exercise all rights and options set forth herein exercisable upon the occurrence of a default, and the Indenture Trustee shall be automatically relieved of any further stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its pre- and post-petition liens and security interests in the Pre-Petition Bond Collateral and the Post-Petition Bond Collateral, all without further order of the Bankruptcy Court.

18.    <u>Release</u>.    The Debtors hereby waive, release and discharge the Indenture Trustee and all holders of the Bonds and their respective affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Bonds and the Bond Documents, any aspect of the prepetition relationship between the Indenture Trustee, and/or all holders of the Bonds, and the Debtors, and any other acts or omissions by the Indenture Trustee and/or all holders of the Bonds in connection with either the Bond Documents or the Indenture Trustee's and holders of the Bonds prepetition relationship with the Debtors.  Further, the Debtors waive any and all rights to object to or contest the amount of the Bond Claim or the Indenture Trustee's security interests in the Pre-Petition Bond Collateral and agree that all such claims and security

interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

19.  <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of the Indenture Trustee to assert a claim under Bankruptcy Code Sections 364(c) and 507(b).

20.  <u>Deemed Request for Stay Relief</u>.  This Interim Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Pre-Petition Bond Collateral and for adequate protection for the use of cash collateral as of the Petition Date.

21.  <u>No Charge on Collateral; Carve Out</u>.  In part in consideration of the Debtors' acknowledgement of the debt due and owing and the Debtors' waiver of any claims under section 506(c) of the Bankruptcy Code, the Indenture Trustee consents to a carve out for certain expenses and professional fees incurred during the pendency of this bankruptcy case which shall be superior in all instances to the liens and claims of the Indenture Trustee and all other parties (the "<u>Carve Out</u>").  For purposes hereof, the "Carve Out" means fees and expenses of professionals retained by the Debtors or the Committee (as defined below) in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (a) incurred or accrued prior to a Termination Event (whether paid or unpaid); (b) provided for under the Budget; and (c) previously or subsequently allowed by court order; plus (ii) $500,000, plus (iii) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of the Bankruptcy Court.  Nothing herein shall constitute a waiver of any right of the Indenture Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain

unpaid.  The entry of a Final Order shall be a conclusive and binding determination on all parties that except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee or the Pre-Petition Bond Collateral or the Post-Petition Bond Collateral under Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

22.    <u>Modification of Stay</u>.  The automatic stay imposed by virtue of Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Indenture Trustee to: (i) receive payments to be made by the Debtors to the Indenture Trustee and the payment of amounts due to the holders of the Bonds, (ii) apply, allocate or pay from any of the funds or accounts maintained by the Indenture Trustee in accordance with the terms of the Bond Documents, (iii) pay all fees and expenses of the Indenture Trustee and its professionals by the Debtors; and (iv) take any action specifically authorized or contemplated by this Interim Order.

23.    <u>Preservation of Rights</u>.  If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification or vacation.

24.    <u>Binding Effect</u>.  This Interim Order shall be binding on all parties in this case that have notice hereof, including, but not limited to, the Debtors and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this case, and any Official Committee of Unsecured Creditors (the "<u>Committee</u>"); <u>provided</u>, <u>however</u>, that this Interim Order is without prejudice to the rights of any Committee to, on behalf of the Debtors' estates, challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim or the pre-petition security interests of the Indenture Trustee, so long as any such challenge is

made on or before 60 days after the commencement of these Bankruptcy Cases, after which time all such challenges shall be deemed finally and conclusively barred.

25. <u>No Competing Liens</u>. Except as set forth herein, the Debtors shall not grant liens on, or security interests in the Pre-Petition Bond Collateral or the Post-Petition Bond Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise.

26. <u>Reservation of Rights</u>. Except as provided in this Interim Order, neither the Debtors nor the Indenture Trustee waives any of their rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtors or the Indenture Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtors or the Indenture Trustee to exercise any of their rights and remedies under the Bankruptcy Code at any time. In particular, the Indenture Trustee reserves its rights to seek modification of this Interim Order.

27. <u>Further Relief</u>. Nothing herein shall (i) preclude the Indenture Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (ii) prevent the Indenture Trustee from asserting at some later time that its liens and security interests in the Pre-Petition Bond Collateral are not being adequately protected.

28. <u>No Control</u>. The Indenture Trustee shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding its consent to this Interim Order and extending financial accommodations of any type, kind or nature under this Interim Order.

29.     No Third Party Beneficiaries.  No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

30.     Effectiveness.  The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date.  This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Federal Rule of Bankruptcy Procedure 6004(h) shall not apply hereto.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or enforceability of any obligations incurred prior to the actual receipt of written notice by the Indenture Trustee of the effective date of such reversal, modification, vacatur or stay or (ii) the validity, extent or enforceability of the liens and claims granted hereunder..

31.     Notices.  All notices, requests, demands, waivers and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight mail or delivery or (d) sent by facsimile.

    (a)    If to the Debtors to:

        Proskauer Rose, LLP
        Attn: Jeff Marwil, Esq.
        Three First National Plaza
        70 West Madison, Suite 3800
        Chicago, IL 19801
        Fax.: 312-962-3550
        e-mail: jmarwil@proskauer.com

    with a copy to:

        Sumner Regional Health Systems, Inc.

555 Hartsville Pike
Gallatin, TN 37066
Attn: Waite Popejoy

(b)     If to the Indenture Trustee to:

Wells Fargo Corporate Trust Service
Attn: Gavin Wilkinson, Vice President
MAC #N9311-115
625 Marquette Avenue, 11th Floor
Minneapolis, MN 55479
Fax.: 612-667-5047
e-mail: gavin.wilkinson@wellsfargo.com

with a copy to:

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Attn: William W. Kannel, Esq.
One Financial Center
Boston, MA 02111
Fax.: 617-542-2241
e-mail: wkannel@mintz.com

and

Prochaska Thompson Quinn & Ferraro, P.C.
Attn: Joseph R. Prochaska, Esq.
401 Church Street, Suite 2600
Nashville, TN 37219
615-244-4563
Fax.: 615-242-0124
e-mail: joeprochaska@ptqflegal.com

32.     <u>Notice of Final Hearing</u>.  the Debtors shall, within two (2) business days after entry of this Interim Order, mail copies of a notice of the entry of this Interim Order, together with a copy of the Motion and a notice of the Final Hearing on: the Initial Notice Parties and (i) any party that has filed prior to such date a request for notices with this Court; (ii) counsel for any official committee(s), if any; (iii) the Securities and Exchange Commission, (iv) the Internal Revenue Service, and (v) the United States Attorney General.

Final Hearing.  A final hearing to consider the Motion will be held on May __,

2010 at _____ __.m. before the **[Hon. _____],** Bankruptcy Judge,

Courtroom at **[_____].**

| |
|---|
| **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY**<br>**AS INDICATED AT THE TOP OF THE FIRST PAGE.** |

Prepared by:


  _/s/ Robert A. Guy, Jr._
FROST BROWN TODD LLC
Robert A. Guy, Jr., Esq., TN # 16715
424 Church Street, Suite 1600
Nashville, Tennessee 37219
Telephone: 615.251.5550
Facsimile: 615.251.5551
E-mail: bguy@fbtlaw.com

   *- and -*

Ronald E. Gold, Esq.*
Joseph B. Wells, Esq.*
201 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com

   *- and -*

PROSKAUER ROSE LLP
Jeff J. Marwil, Esq.*
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  312-962-3550

   *- and -*

Jeffrey W. Levitan, Esq.*
Adam T. Berkowitz, Esq.*
1585 Broadway
New York, NY  10036-8299
Telephone:  212-969-3000


*Proposed Counsel for the Debtors*

*Pro Hac Vice* Motion Pending

# SCHEDULE A


# BUDGET

## Sumner Regional Health System, Inc.
### *Cash Collateral Budget*
#### *$ in 000s*

| Week Ending-Friday | 05/07/10 | 05/14/10 | 05/21/10 | 05/28/10 |
|---|---|---|---|---|
| Collections | | | | |
| Patient Collections, Net of Refunds | 2,788 | 2,788 | 2,788 | 2,788 |
| Other Collections | 109 | 109 | 109 | 109 |
| Total Collections | 2,897 | 2,897 | 2,897 | 2,897 |
| | | | | |
| Disbursements | | | | |
| Salaries, Wages and Benefits | 1,100 | 50 | 2,500 | 115 |
| Supplies & Other | 500 | 1,100 | 1,100 | 900 |
| Total | 1,600 | 1,150 | 3,600 | 1,015 |
| | | | | |
| **Operating Cash Flow Activity** | 1,297 | 1,747 | (703) | 1,882 |
| | | | | |
| CapEx | 0 | 33 | 33 | 33 |
| | | | | |
| **Net Cash Flow after CapEx** | 1,297 | 1,714 | (736) | 1,849 |
| | | | | |
| Debt - payments | 30 | 9 | 2 | 64 |
| | | | | |
| **Net Cash Flow after Debt Service** | 1,267 | 1,705 | (739) | 1,785 |
| | | | | |
| Restructuring Costs | 0 | 0 | 0 | 0 |
| | | | | |
| **Net Cash Flow Activity** | 1,267 | 1,705 | (739) | 1,785 |
| | | | | |
| Est. Beginning Cash Book Balance | 8,344 | 9,611 | 11,316 | 10,577 |
| Net Cash Flow Activity | 1,267 | 1,705 | (739) | 1,785 |
| Est. Ending Cash Book Balance | 9,611 | 11,316 | 10,577 | 12,362 |

This Cash Collateral Budget does not include cash receipts or disbursements associated with
 Bond Funds as defined in the Interim Order regarding use of Cash Collateral and
 Adequate Protection.

<u>**Schedule 16**</u>

<u>**Relating to the Master Trust Indenture**</u>

4.02(a) (relating to corporate existence and qualification to do business)
4.02(d) (relating to tax exempt status)
4.02(e) (relating to prohibition on legally impermissible discrimination)
4.05 (relating to financial statements, etc.)
4.09 (relating to additional liens other than permitted encumbrances)
4.13(c) (relating to tax-exempt status)
4.19 (relating to insurance)

<u>**Relating to the 2007 Loan Agreement**</u>

7.1 (relating to purposes for which facility may be used)
8.1 (relating to maintenance of corporate existence and status)
8.4 (relating to financial statements, etc.)
8.6 (relating to accreditation and licensure)

<u>**Relating to the 2008 Loan Agreement**</u>

7.1 (relating to purposes for which facility may be used)
8.1 (relating to maintenance of corporate existence and status)
8.4 (relating to financial statements, etc.)
8.6 (relating to accreditation and licensure)

4907901v.1