Marian F. Harrison
US Bankruptcy Judge

Dated: 05/18/10

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **In re:** ) | **Chapter 11** |
| ) | |
| **Sumner Regional Health Systems, Inc.,** *et al.*[1] ) | **Case No. 3:10-bk-04766** |
| ) | |
| ) | **Jointly Administered** |
| **Debtors.** ) | |
| ) | |
| ) | |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) SCHEDULING
THE AUCTION, (C) SCHEDULING THE SALE HEARING, (D) APPROVING
THE ASSUMPTION AND ASSIGNMENT PROCEDURES RELATED TO THE SALE,
(E) AUTHORIZING PAYMENT OF THE BREAK-UP FEE AND EXPENSE
REIMBURSEMENT AND (F) APPROVING THE FORM OF THE SALE NOTICE**

Upon the motion (the "Motion")[2] of Sumner Regional Health Systems, Inc. and the other above-captioned debtors and debtors-in-possession (the "Debtors"), dated May 1, 2010, requesting, among other relief, entry of an order (A) approving the Bidding Procedures,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sumner Regional Health Systems, Inc. (3738), Trousdale Medical Center, Inc. (5666), Frank T. Rutherford Memorial Hospital, Inc. (8987), SRHS Holdings, LLC (2680), Sumner Homecare and Hospice, LLC (4324), Family Wellness Group of Middle Tennessee, LLC (1860) and ClinicCare, LLC (6783).

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

1

(B) scheduling the Post-Petition Auction, (C) scheduling the Sale Hearing, (D) approving the Assumption and Assignment Procedures, (E) authorizing payment of the Break-Up Fee and Expense Reimbursement pursuant to the Stalking Horse APA and (F) approving the form of the Sale Notice; and notice of the Motion being proper and sufficient and all interested parties having been afforded an opportunity to be heard with respect to the Motion; and upon review and consideration of (i) the Motion, (ii) the arguments of counsel and evidence proffered or adduced at the hearing thereon (the "<u>Bidding Procedures Hearing</u>"), and (iii) the docket and proceedings in the above-captioned cases (the "<u>Chapter 11 Cases</u>"); and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest:

**THE COURT FINDS THAT:**[3]

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory and rule-based predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

C. Notice of the Motion, Bidding Procedures Hearing and Sale Hearing having been given to the following parties is sufficient in light of the circumstances and the nature of the relief requested in the Motion: (a) the United States Trustee for the Middle District of Tennessee; (b) the Debtors' 20 largest unsecured creditors; (c) the Internal Revenue Service; (d)

---

[3] Regardless of the heading under which they appear, any (1) findings of fact that constitute conclusions of law shall be conclusions of law and (2) conclusions of law that constitute findings of fact shall be findings of fact. All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion are incorporated herein to the extent not inconsistent herewith.

2

all parties known or reasonably believed to have asserted an encumbrance on any of the Assets; (e) the counterparties to each of the Potentially Assigned Contracts; (f) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Assets; (g) all taxing and regulatory authorities having jurisdiction over any of the Assets, including the Tennessee Department of Health, the Tennessee Board of Pharmacy, the Tennessee Department of Mental Health and Developmental Disabilities, the Secretary of the United States Department of Health and Human Services, the Tennessee Department of Environment and Conservation, Tennessee Department of Finance and Administration (Bureau of TennCare), the Federal Communications Commission, the United States Environmental Protection Agency, the United States Department of Health and Human Services - the Centers for Medicare and Medicaid Services and the United States Drug Enforcement Administration, Tennessee Health Service & Development Agency, Kentucky Department of Medicaid Services, Indiana Family and Social Services Administration, Tennessee Department of Labor and Welfare Development; (h) the Attorney General for the State of Tennessee; and (i) all parties that have requested personal notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

D. The form of Sale Notice attached to the Motion as **Exhibit D** is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Post-Petition Auction.

E. The notice to counterparties to Potentially Assigned Contracts provided in accordance with the Assumption and Assignment Procedures is reasonably calculated to provide all counterparties to the Potentially Assigned Contracts with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any Cure Amounts associated therewith.

3
6245/69444-014 Current/18989229v4
Case 3:10-bk-04766    Doc 181    Filed 05/18/10    Entered 05/18/10 13:38:46    Desc Main
Document    Page 3 of 16

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is approved in its entirety.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court, are overruled to the extent necessary to grant the relief contained herein.

3. The Bidding Procedures, in the form attached hereto, are approved and the Debtors are authorized to take any and all actions necessary and/or appropriate to implement the Bidding Procedures.

4. As provided in the Bidding Procedures, the Debtors shall conduct the Post-Petition Auction on June 14, 2010 at 11 a.m. at the offices of Frost Brown Todd LLC, 424 Church Street, Suite 1600, Nashville, Tennessee, or such other location as determined by the Debtors after consultation with Wells Fargo Bank, as Master Trustee, the Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases, and Sumner County, Tennessee.

5. In the event of a competing bid for the Assets, the Purchaser will be entitled to credit bid the amount of the Break-Up Fee and Expense Reimbursement, in the amount of expenses actually incurred through the date of the Auction, to its increased bids in accordance with the terms of the Bidding Procedures.

6. The Assumption and Assignment Procedures, substantially in the form attached to the Motion as **Exhibit C**, are approved and the Debtors are authorized to take any and all actions necessary and/or appropriate to implement such procedures.

7. The form of Sale Notice attached to the Motion as **Exhibit D** is hereby approved as sufficient.

8. If the Stalking Horse is not the High Bidder, then pursuant to the Stalking Horse APA, the Debtors are authorized to pay the Stalking Horse the Break-Up Fee and the Expense Reimbursement from the proceeds of the sale to the High Bidder.

9. Within five (5) business days after entry of this Order, the Debtors: (a) shall publish notice of the Sale, the time and place of the proposed Post-Petition Auction, and the time and place of the Sale Hearing in (i) a local newspaper, (ii) a local business publication, (iii) a national healthcare publication, if an appropriate publication is available and (iv) a national newspaper; and (b) shall send copies of this Order, the Sale Notice, the Bidding Procedures, and the Assumption and Assignment Procedures to the Notice Parties listed in paragraph C of this Order.

10. The Sale Hearing shall be conducted on June 15, 2010 at 1 p.m, prevailing Central time. The Debtors shall seek entry of an order at the Sale Hearing approving and authorizing the proposed Sale to the High Bidder on terms and conditions substantially consistent with the Stalking Horse APA, as amended or modified. If approved, the bid submitted by such bidder will be referred to as the "<u>Successful Bid</u>.". The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing.

11. Objections to the relief requested in the Motion, other than the relief granted herein, must: (i) be in writing and filed on the docket in the Chapter 11 Cases; (ii) comply with the Bankruptcy Rules; and (iii) be served upon the Debtors and Notice Parties so as to be received on or before 4:00 p.m., prevailing Central time, on June 8, 2010.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

5

13. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or any other Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable.

14. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.

16. This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Stalking Horse APA and this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

Prepared by:

  */s/ Robert A. Guy, Jr.*
FROST BROWN TODD LLC
Robert A. Guy, Jr., Esq., TN # 16715
424 Church Street, Suite 1600
Nashville, Tennessee 37219
Telephone: 615.251.5550
Facsimile: 615.251.5551
E-mail: bguy@fbtlaw.com

   *- and -*

Ronald E. Gold, Esq.*
Joseph B. Wells, Esq.*
201 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com

   *- and -*

PROSKAUER ROSE LLP
Jeff J. Marwil, Esq.*
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  312-962-3550

   *- and -*

Jeffrey W. Levitan, Esq.*
Adam T. Berkowitz, Esq.*
1585 Broadway
New York, NY  10036-8299
Telephone:  212-969-3000

*Proposed Counsel for the Debtors*

*Admitted *Pro Hac Vice*

7
6245/69444-014 Current/18989229v4
Case 3:10-bk-04766    Doc 181    Filed 05/18/10    Entered 05/18/10 13:38:46    Desc Main
Document      Page 7 of 16

# BIDDING PROCEDURES

6245/69444-014 Current/18989229v4
Case 3:10-bk-04766   Doc 181   Filed 05/18/10   Entered 05/18/10 13:38:46   Desc Main
Document   Page 8 of 16

# BIDDING PROCEDURES

Set forth below is the general process to be employed by the Seller (as defined below) with respect to the proposed sale (a "Sale") of all or substantially all of the assets of the above-referenced debtors and debtors-in-possession (the "Assets"), pursuant to the asset purchase agreement (the "Stalking Horse APA") dated as of April 30, 2010, by and among Sumner Regional Health Systems, Inc. ("SRHS"), Trousdale Medical Center, Inc. ("Trousdale"), Frank T. Rutherford Memorial Hospital, Inc. ("Rutherford"), SRHS Holdings, LLC ("Holdings"), Sumner Homecare and Hospice, LLC ("Homecare"), Sumner Regional EMS, LLC ("EMS"), Family Wellness Group of Middle Tennessee, LLC ("Wellness"), ClinicCare, LLC ("ClinicCare", and together with SRHS, Trousdale, Rutherford, Holdings, Homecare, EMS and Wellness collectively, the "Debtors" or "Seller"), LifePoint Acquisition Corp. (the "Stalking Horse") and Historic LifePoint Hospitals, Inc., or pursuant to a Qualified Bidder Purchase Agreement (as defined below), in accordance with the Debtors' Motion for Orders: (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction, (C) Authorizing Payment of the Break-Up Fee and Expense Reimbursement, (D) Scheduling the Sale Hearing, (E) Approving the Assumption and Assignment Procedures Related to the Sale, and (F) Approving the Form of the Sale Notice; and (II) (A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving Purchase Agreement, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief (the "Bid and Sale Procedures Motion").[1]

## I. The Bidding Process

Set forth below is the general process to be employed by the Seller with respect to the proposed Sale of the Assets:

A. Any person interested in making an offer to purchase the Assets shall comply with these procedures.

B. Only Qualified Bids (as defined below) shall be considered by the Debtors.

C. If the Debtors do not receive a Qualified Bid other than the Stalking Horse APA prior to the Bid Deadline (as defined below), then the Stalking Horse's offer to acquire the Assets under the Stalking Horse APA shall constitute the highest or otherwise best Qualified Bid (the "High Bid").

D. If the Debtors receive a Qualified Bid other than the Stalking Horse APA prior to the Bid Deadline, then the Debtors, after consultation with Wells Fargo Bank, as Master Trustee (the "Master Trustee"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases, and Sumner County, Tennessee (the "County"), shall select a Qualified Bid as the High Bid after the Debtors have conducted the Post-Petition Auction (as defined

---

[1] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed thereto in the Bid and Sale Procedures Motion.

9

below) and considered, among other things, the total net consideration to be received by their estates as well as other financial and contractual terms relevant to the proposed Sale, including those factors affecting the speed and certainty of consummating the proposed Sale.

E. If any High Bidder fails to consummate the Sale, and such failure is the result of a breach by the High Bidder, except to the extent provided in such bidders' marked agreement (or the Stalking Horse APA), the Seller specifically reserves the right to seek all available damages from such person. Upon failure to consummate the proposed Sale because of a breach on the part of the High Bidder after an order entered at the Sale Hearing (defined below), the Debtors shall be permitted, after consultation with the Master Trustee, the Committee, and the County, to select the next highest or otherwise best bid to be the High Bid and to consummate such transaction without further order of the Bankruptcy Court.

F. In the event that the Bankruptcy Court approves any agreement that contemplates a transaction or series of related transactions, other than the transactions to be consummated under the Stalking Horse APA, pursuant to which a material portion of the Assets will be acquired by, or transferred to a High Bidder other than the Stalking Horse, then upon Seller's consummation of such a Sale, the Break-Up Fee and Expense Reimbursement shall be immediately paid to the Stalking Horse.

G. The Good Faith Deposits of the High Bidder and the second highest bidder at the Post-Petition Auction (the "Second Highest Bidder") shall be retained by the Seller and held in escrow in an interest bearing account and all Qualified Bids will remain open, notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of a High Bid by a Qualified Bidder, until the earlier of (1) the closing of the Sale of the Assets, (2) the date that is thirty (30) days after entry of a Sale Order approving a Sale to the High Bidder, or (3) the date that is thirty-five (35) days after the Post-Petition Auction (the "Return Date"). On the Return Date, if the Seller has not completed a Sale to the High Bidder or Second Highest Bidder, so long as the failure to consummate a sale to the Second Highest Bidder is not the result of a breach by the Second Highest Bidder, the Seller shall return the Good Faith Deposit of the Second Highest Bidder, with accrued interest. The Seller shall return the Good Faith Deposits of all bidders other than the High Bidder and the Second Highest Bidder within five (5) business days after the Post-Petition Auction.

H. By submitting a Bid, each Bidder shall be deemed to acknowledge: (i) that it is bound by these Bidding Procedures; (ii) that it had an opportunity to inspect and examine the Assets and all other pertinent information with respect to the Assets before submitting such Bid and that each such Bid is based solely on that review and upon each Bidder's own investigation and inspection; (iii) that is has consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Post-Petition Auction and the construction and enforcement of any transaction documents relating to the

10

6245/69444-014 Current/18989229v4
Case 3:10-bk-04766    Doc 181    Filed 05/18/10    Entered 05/18/10 13:38:46    Desc Main
Document    Page 10 of 16

Bidder's Bid; and (iv) in making its Bid, such Bidder is not relying upon any written or oral statements, representations or warranties of the Debtors, their agents or representatives.

II. **Participation Requirements**

A. Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the sale process, each person (a "Potential Bidder") must deliver to the Debtors:

   i. an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

   ii. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Debtors, after consultation with the Master Trustee, the Committee, and the County, demonstrating such Potential Bidder's ability to timely close the proposed transaction and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed and assigned.

B. A "Qualified Bidder" is (1) the Stalking Horse and, if applicable, (2) a Potential Bidder that delivers the documents described in subparagraphs A(i) and A(ii) above and that the Debtors, after consultation with the Master Trustee, the Committee and the County, determine is reasonably likely (based on the availability of financing, experience and other considerations) to submit a *bona fide* offer and to be able to consummate the proposed Sale if selected as the High Bidder. Two or more Potential Bidders may be deemed a Qualified Bidder if such Potential Bidders, considered in the aggregate, otherwise meet the foregoing criteria and so long as such bidders bid in good faith and do not violate section 363(n) of the Bankruptcy Code.

C. The Debtors shall determine, after consultation with the Master Trustee, the Committee, and the County, whether a Potential Bidder is a Qualified Bidder and shall provide written notice of their determination to such Potential Bidder and to each Qualified Bidder at least twenty-four (24) hours prior to the Auction, when copies of the Initial Bid are circulated in accordance with paragraph IV.D. below.

D. Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with a Sale. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that such Bidder is not a Qualified Bidder.

### III. Due Diligence

Subject to the Debtors' receipt of an executed confidentiality agreement in form and substance satisfactory to them (unless already delivered in connection with the Pre-Petition Process), the Debtors shall afford each Potential Bidder access to a data room containing information regarding the Assets and may make reasonable requests for additional information from the Debtors. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline, except to Qualified Bidders who have submitted Qualified Bids.

### IV. Bid Deadline and Requirements

A. A "Qualified Bid" is (1) the Stalking Horse's offer to acquire the Assets pursuant to the Stalking Horse APA and, if applicable, (2) another Qualified Bidder's offer to acquire the Assets if such offer was received prior to the Bid Deadline and if such offer included each of the following (collectively, a "Bid Package"):

   i. An executed copy of an asset purchase agreement (including schedules and exhibits, the "Qualified Bidder Purchase Agreement"): (a) in clean and marked versions to reflect changes to the Stalking Horse APA; (b) irrevocable until the Return Date; and (c) for the purchase of substantially all of the Assets, "as is, where is," in exchange for a cash purchase price (the "Minimum Cash Amount") that exceeds the Purchase Price (as such term is defined in the Stalking Horse APA) by at least $7,000,000 (the maximum Expense Reimbursement plus the Break-Up Fee plus a $3,500,000 initial bid increment) and the assumption or otherwise equivalent value of at least the Assumed Liabilities (as such term is defined in the Stalking Horse APA). Executed copies of two or more asset purchase agreements may each be deemed a Qualified Bidder Purchase Agreement if, considered in the aggregate, such asset purchase agreements otherwise meet the foregoing criteria.

   ii. Financial and other information setting forth adequate assurance of future performance (a) under section 365 of the Bankruptcy Code, with respect to any contracts that the bidder seeks to take assignment of (the "Assumed Contracts"), and (b) of any obligations arising under or in connection with any ERISA qualified plan (an "ERISA Plan") of the Debtors that such bidder seeks to assume, in each case in a form requested by the Debtors to allow the Debtors to serve such information within one (1) business day after such receipt on either counterparties to Assumed Contracts that have requested, in writing, such information or the Pension Benefit Guaranty Corporation, as appropriate, in connection with the proposed transaction.

   iii. A good faith cash deposit (the "Good Faith Deposit") in the amount of 10% of the Minimum Cash Amount with respect to a Bid, in the form of a bank or certified check (or other form acceptable to the Debtors in its sole discretion) payable to such party as the Debtors may determine, which Good Faith Deposit shall be held in escrow or another segregated account,

12

not subject to any security interest or lien, and utilized in accordance with these Bidding Procedures.

    iv.    A written statement that the bid is not conditioned on (a) obtaining financing or other financing contingencies or (b) the outcome of unperformed due diligence by the bidder or any other contingencies.

    v.    If such information is not set forth in the Qualified Bidder Purchase Agreement, a statement as to whether or not such bidder intends to assume any ERISA Plan or any obligations arising under any ERISA Plan.

B.    In order to be considered, Bid Packages must be received on or before 4:00 p.m., prevailing Central time, on June 10, 2010 (the "<u>Bid Deadline</u>") and, except as may be instructed otherwise with respect to the Good Faith Deposit, should be delivered to:

> Proskauer Rose LLP
> Attn: Monte Dube and Jeff Marwil
> 70 West Madison, Suite 3800
> Chicago, Illinois 60602
> Telephone: (312) 962-3550
> Facsimile: (312) 962-3551
>
> and
>
> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attn: William W. Kannel
> One Financial Center
> Boston, MA 02111
> Telephone: (617) 348-1665
> Facsimile: (617) 542-2241
>
> and
>
> Alston & Bird LLP
> Attn: Martin Bunin and Craig Freeman
> 90 Park Avenue
> New York, NY 10016
> Telephone: (212) 210-9400
> Facsimile (212) 210-9444
>
> and
>
> Gullet, Sanford, Robinson & Martin, PLLC
> Attn: G. Rhea Bucy
> 315 Deaderick Street, Suite 1100
> Nashville, TN 37238

13

Telephone: (615) 244-4994

C. The Debtors, upon receipt of each Bid Package, shall distribute a copy of such Bid Package by electronic mail to counsel for the Stalking Horse, counsel for Wells Fargo Bank as Master Trustee, counsel to the Committee and counsel to the County.

D. After the Bid Deadline, the Debtors shall, after consultation with the Master Trustee, the Committee and the County, determine which Qualified Bid represents the then highest or otherwise best value to the Debtors (the "<u>Initial Bid</u>"). At least twenty-four (24) hours prior to the Post-Petition Auction, the Debtors shall distribute copies of the Initial Bid to each Qualified Bidder.

V. **<u>Post-Petition Auction</u>**

If the Debtors receive a Qualified Bid other than that of the Stalking Horse, the Debtors will conduct an auction at which competitive bids can be made by Qualified Bidders in accordance with the terms of these Bidding Procedures (the "<u>Post-Petition Auction</u>"). The Post-Petition Auction shall take place at the offices of Frost Brown Todd LLC, 424 Church Street, Suite 1600, Nashville, Tennessee, or such other location as determined by the Debtors after consultation with the Master Trustee, the Committee , and the County, on June 14, 2010, commencing at 11:00 a.m. prevailing Central time. Subject to the "Reservation of Rights" set forth below, the Post-Petition Auction shall be governed by the following procedures:

A. Only a Qualified Bidder (and the representatives of that Qualified Bidder designated in writing by the Qualified Bidder) who has submitted a Qualified Bid (including the Stalking Horse) shall be eligible to attend and participate at the Post-Petition Auction; provided further that, after consultation with the Master Trustee, the Committee and the County, the Debtor may deem a bidder qualified.

B. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale and is not in violation of section 363(n) of the Bankruptcy Code.

C. The Post-Petition Auction shall begin with the Initial Bid (which, as a Qualified Bid, will provide for at least the Minimum Cash Amount) and proceed in minimum additional increments of $350,000.

D. Each bid at the auction must meet each of the criteria of a Qualified Bid, other than the requirement that it be received prior to the Bid Deadline.

E. The amount of the Expense Reimbursement, in the amount of expenses actually incurred through the date of the Auction, and Break-Up Fee may be added to and deemed a part of any bid of the Stalking Horse.

14

F.  All bids shall be placed on the record, which shall either be transcribed or videotaped, and each Qualified Bidder shall be informed of the terms of the previous bid.

G.  The Post-Petition Auction shall continue until there is only one offer that the Debtors, after consultation with the Master Trustee, the Committee and the County, determine is the High Bid. Without prejudice to any other party, in determining which Qualified Bid to select as the High Bid, the Debtors may consider, among other things: (1) the amount of the purchase price; (2) the form of consideration being offered; (3) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; and (4) the net benefit to the Debtors' estates, their creditors, and the impact of the Sale upon the community served by the Debtors. Before the conclusion of the Post-Petition Auction, the Debtors shall inform each of the Bidders of the decision regarding designation of the High Bid, and the Qualified Bidder who submitted such High Bid shall be required to execute a definitive asset purchase agreement at such time. In addition, the Qualified Bidder whose bid is chosen as the High Bid shall be required, within 24 hours of the conclusion of the Post-Petition Auction, to increase its Deposit to an amount equal to 10% of the aggregate amount of the High Bid. The Debtors shall present the High Bid to the Bankruptcy Court for approval at the Sale Hearing.

H.  The Debtors, in their reasonable discretion and after consultation with the Master Trustee, the Committee and the County, may adopt rules for the Post-Petition Auction at or prior to the Post-Petition Auction that, in the Debtors' reasonable discretion, will better promote the goals of the Post-Petition Auction and that are not materially inconsistent with any of the provisions of the Bid and Sale Procedures Order.

## VI. Sale Hearing

The Sale Hearing shall take place in the courtroom of Honorable Marian Harrison in the United States Bankruptcy Court for the Middle District of Tennessee, United States Customs House, 701 Broadway, Courtroom 3, 2nd Floor, Nashville, Tennessee on June 15, 2010 at 1 p.m. prevailing Central time. With the consent of the High Bidder, the Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing or otherwise. At such Sale Hearing, the Debtors shall present the High Bid to the Bankruptcy Court for approval. A bid submitted by a Qualified Bidder that is approved by the Bankruptcy Court as the winning bid shall be referred to as the "Successful Bid."

## VII. "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except, with respect to the Stalking Horse, to the extent set forth in the Stalking Horse APA and, with respect to a bidder with the High Bid, to the extent set forth in the relevant purchase agreement of such bidder, as approved by the Bankruptcy Court.

15

## VIII. Reservation of Rights

In addition to the rights set forth in section V.H., the Debtors may, after consultation with the Master Trustee, the Committee and the County, modify these Bidding Procedures or impose, at or prior to the Post-Petition Auction, additional customary terms and conditions on the proposed Sale of its assets if in its reasonable judgment such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process, so long as such modifications and/or additional terms are consistent with the provisions of the Stalking Horse APA.

NSHLibrary TMP.TMP 89600v1

16

6245/69444-014 Current/18989229v4

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:10-bk-04766    Doc 181    Filed 05/18/10    Entered 05/18/10 13:38:46    Desc Main Document    Page 16 of 16