**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **SUMNER REGIONAL HEALTH** | ) | **CASE NO. 310-04766** |
| **SYSTEMS, INC., et al.,** | ) | **CHAPTER 11** |
| | ) | **JOINTLY ADMINISTERED** |
| **Debtors.** | ) | |
| | ) | **JUDGE MARIAN F. HARRISON** |
| | ) | |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court upon Sumner County, Tennessee's (hereinafter "County") objections to the debtors'[1] motion to sell its assets free and clear of liens, claims, encumbrances, and other interests and the motion to reject the Lease Termination Agreement with the County, both filed by Sumner Regional Health Systems, Inc. (hereinafter "SRHS") and its affiliated debtors.[2] For the following reasons, the Court finds that the debtors' motion for authority to sell the debtors' assets free and clear of liens, claims, encumbrances, and other interests should be granted.

_____

[1]The debtors in these Chapter 11 cases are: Sumner Regional Health Systems, Inc., Trousdale Medical Center, Inc., Frank T. Rutherford Memorial Hospital, Inc., SRHS Holdings, LLC, Sumner Homecare and Hospice, LLC, Family Wellness Group of Middle Tennessee, LLC, and ClinicCare, LLC.

[2]All other objections to the actual sale appear to have been resolved.

# I. __BACKGROUND__

The debtors filed for bankruptcy protection on April 30, 2010.  Prior to that date, on November 1, 1994, the County and SRHS entered into a lease pursuant to which the County leased certain real property to SRHS, which is an acute care hospital located in Gallatin, Tennessee. Thereafter, SRHS and the County entered into a Lease Termination Agreement, dated January 27, 2004, pursuant to which the County agreed to terminate the lease and convey the underlying real property to SRHS.  In return, SRHS agreed to pay $10,000,000 and to continue to provide certain medical services to County inmates and indigent residents through at least October 1, 2034.  Pursuant to the Lease Termination Agreement, the County transferred the real property to SRHS by a warranty deed (the "Deed"), which was recorded on January 28, 2004. The Deed describes SRHS' rights as:

> TO HAVE AND TO HOLD the Property, together with all the appurtenances and hereditaments thereunto belonging or in anywise appertaining, to [SRHS], its successors and assigns, forever.

The Deed then continues as follows:

> Upon the occurrence of any of the Triggering Events set forth below, the Board of Directors of [SRHS] shall distribute all of the assets of [SRHS] to [the County]. . . .

These Triggering Events include "[t]he sale or lease of all or substantially all of the Real Property" and "[t]he sale or lease by [SRHS] of all or substantially all of the assets of [SRHS]."

## II. **DISCUSSION**

**A.** **The Deed is clear on its face.  There is no restriction on alienation of the property.  At most, the County may attempt to assert an interest in the assets of SRHS after sale (the proceeds of sale).**

Under Tennessee law, a deed is to be interpreted according to the clear expressed intentions.  *See Brown v. Brown*, 45 Tenn. App. 78, 95, 320 S.W.2d 721, 728 (Tenn. Ct. App. 1959).  If in fact the Deed creates some "condition subsequent," as the County asserts, numbered paragraph one states only that upon the occurrence of a Triggering Event, to wit, the sale of all or substantially all of the real property (¶ 2.i.), or the sale or lease of all or substantially all of SRHS' assets (¶ 2.ii.), then SRHS shall distribute "all of the assets of [SRHS] to [the County]."  For the Triggering Event to occur at all, in the circumstances presented here, the sale to LifePoint Acquisition Corporation (hereinafter "LifePoint") must occur.  The County's only possible claim (disputed) is to the assets remaining after the Triggering Event, in this case, the proceeds of the sale.  Accordingly, nothing in the Deed to the property prohibits the debtors from selling its assets, free and clear of all liens, to LifePoint.

**B.** **11 U.S.C. § 363(f)(1), (4), and (5) permit the sale of SRHS' assets to LifePoint free and clear of any interest the County may have.**

Generally, pursuant to 11 U.S.C. § 363(b)(1), the debtor-in-possession, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate. The Sixth Circuit has held that a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under 11 U.S.C. § 363(b)(1) when a sound business purpose dictates such action. ***Stephens Industries, Inc. v. McClung***, 789 F.2d 386, 390 (6th Cir. 1986). ***See also In re New Era Resorts, LLC,*** 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) ("court has broad discretion in determining whether to approve a sale other than in the ordinary course of business").

The ability to sell is limited by 11 U.S.C. § 363(f) , which provides that:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The requirements of 11 U.S.C. § 363(f) are in the disjunctive. The sale can be approved if any one of the five factors are present. The Court finds that three of these requirements have been met.

As stated earlier, the Deed is clear. Consequently, subject to the approval of the Tennessee Attorney General, as required under T.C.A. § 48-68-203 (a condition all parties agree must be fulfilled before the sale may close), 11 U.S.C. § 363(f)(1) permits the sale to LifePoint free and clear because "applicable nonbankruptcy law" permits the sale free and clear. Specifically, the Deed imposes no impediment under Tennessee law.

Moreover, in light of the Deed, 11 U.S.C. § 363(f)(5) permits the sale to LifePoint because the County can be compelled to accept a money satisfaction. Again, the Triggering Event in the Deed is the sale, and not until the sale is complete will the County be entitled to, if anything, some claim to the proceeds as assets of the estate.

Even if these other provisions did not permit a sale free and clear, 11 U.S.C. § 363(f)(4) would allow the sale to proceed. Section 363(f)(4) enables a debtor-in-possession to sell property free of any liens when the obligations are in bona fide dispute. A bona fide dispute exists when "there is an objective basis for either a factual or legal dispute as to the validity of the debt." *In re Pierce*, 384 B.R. 477, 482 (Bankr. S.D. Ohio 2008) (citation omitted). It is the existence of a bona fide dispute rather than the resolution of the dispute that is relevant under 11 U.S.C. § 363(f)(4), *In re Nicole Energy Serv., Inc.*, 385 B.R. 201, 229 (Bankr. S.D. Ohio 2008). Certainly, even if the Court is wrong about the Deed, there exists a bona fide dispute which would entitle the estate to go forward with the sale.

### C.    Breach of the Lease Termination Agreement is not a Triggering Event under the Deed.

A breach of the Lease Termination Agreement is not a Triggering Event under the Deed.  Therefore, while the Lease Termination Agreement is attached to the Deed, it has no effect upon the debtors' ability to sell its assets free and clear to LifePoint.  The debtors' request to reject this agreement will be addressed under separate order.

Accordingly, there is nothing but the Tennessee Attorney General's action to stop the proposed sale to LifePoint, free and clear, and the sale may proceed following the Tennessee Attorney General's approval.

## III.  CONCLUSION

As discussed above, the debtors have demonstrated that the requirements of 11 U.S.C. § 363(f) have been satisfied and that the debtors' assets can be sold free and clear of any interests of the County arising from the Deed.  Moreover, the sale is in the best interests of the estates, creditors of the estates, and other parties-in-interest.  Accordingly, the sale may proceed as set forth above.

While the determination of the "validity, priority, or extent of a lien or other interest in property" normally requires an adversary proceeding, Fed. R. Bankr. P. 7001(2), it appears that the parties wish to have the County's claim to the sale proceeds determined more

expeditiously.  Also, after considering the pleadings and the arguments of counsel, the Court believes that no further pleadings by the parties are necessary in determining whether this decision can be made as a matter of law or whether further proof is necessary.  Should any party wish to weigh in further on what remains or to request that the matter proceed with the filing of an adversary proceeding under Fed. R. Bankr. P. 7001(2), it should file its further arguments by June 25, 2010.

The debtors shall submit the appropriate order incorporating the Court's findings.

**THIS MEMORANDUM OPINION WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**