**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Sumner Regional Health Systems, Inc., *et al.*[1] | ) | Case No. 3:10-bk-04766 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**ORDER PURSUANT TO SECTIONS 105(a), 363(b), AND 365
OF THE BANKRUPTCY CODE (A) AUTHORIZING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B)
AUTHORIZING AND APPROVING THE RELATED ASSET PURCHASE
AGREEMENT; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OR
REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
RELATED THERETO; AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") dated May 1, 2010 of the above-captioned

debtors and debtors-in-possession (collectively, the "Debtors" or "Sellers") for entry of an order,

pursuant to sections 105(a), 363(b) and 365 of title 11 of the United States Code (the

"Bankruptcy Code") and Rules 2002, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sumner Regional Health Systems, Inc. (3738), Trousdale Medical Center, Inc. (5666), Frank T. Rutherford Memorial Hospital, Inc. (8987), SRHS Holdings, LLC (2680), Sumner Homecare and Hospice, LLC (4324), Family Wellness Group of Middle Tennessee, LLC (1860) and ClinicCare, LLC (6783).

7653/69444-001 Current/18819201v15

Procedure (the "Bankruptcy Rules"), approving (i) the sale (the "Sale"), free and clear of liens, claims, encumbrances and other interests, of substantially all of the Debtors' assets (the "Assets") to LifePoint Acquisition Corp. and its successors and assigns[2] (the "Purchaser"), on the terms set forth in that certain Asset Purchase Agreement between the Debtors, the Purchaser and Historic LifePoint Hospitals, Inc., dated April 30, 2010 (as amended, the "Agreement") and (ii) the assumption and assignment to the Purchaser of the contracts and leases as set forth on the schedule to be filed with Court pursuant to paragraph 17 below and incorporated into this Order by reference (the "Assumed Contracts and Leases"), all as described in the Motion; and this Court having reviewed the Motion and the Agreement[3]; and upon this Court's prior order, dated May 18, 2010 approving the Bidding Procedures (the "Bidding Procedures Order"); and due notice of the Motion, the Bidding Procedures Order and the auction which would have been conducted in connection therewith had the Debtors received competing bids (the "Post-Petition Auction") having been given to all parties entitled thereto;

**NOW, THEREFORE,** upon the entire record of the hearings held on June 15, June 21, and June 23, 2010 (collectively, the "Sale Hearing") and these cases, including without limitation the testimony of Waite S. Popejoy and all of the exhibits and evidence admitted at the Sale Hearing, and after due deliberation thereon, and based upon the Court's Memorandum Opinion entered on June 18, 2010 and the additional findings and rulings made on the record by the Court at the Sale Hearing which are incorporated herein by reference, and good cause appearing for the relief requested;

---

[2] Such successors and assigns may include, without limitation, the following entities: Smith County Memorial Hospital, LLC; Riverview Medical Center, LLC; Sumner Regional Medical Center, LLC; Trousdale Medical Center, LLC; Sumner Physician Practices, LLC; and Sumner Real Estate Holdings, LLC.

[3] Unless otherwise defined in this Order, capitalized terms used herein shall have the meanings ascribed to such terms in the Motion or the Agreement, as applicable.

7653/69444-001 Current/18819201v15

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363(b), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9007.

C.      Proper, timely, adequate and sufficient notice of the Motion and the relief requested therein, the Bidding Procedures, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts and Leases, and related transactions described in the Agreement (all such transactions being collectively referred to as the "Sale Transaction") has been provided in accordance with sections 102(1), 365 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9007 and in compliance with the Bidding Procedures Order to all interested persons and entities, including (a) the United States Trustee for the Middle District of Tennessee; (b) all of the Debtors' known creditors; (c) the Internal Revenue Service; (d) all parties known or reasonably believed to have asserted an encumbrance on any of the Assets; (e) the counterparties to each of the Potentially Assigned Contracts; (f) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Assets; (g) all taxing and regulatory authorities having jurisdiction over any of the Assets, including the Tennessee Department of Health, the Tennessee Board of Pharmacy, the Tennessee Department of Mental Health and Developmental Disabilities, the Secretary of the United States Department of Health and Human Services, the Tennessee Department of Environment and Conservation,

3

Tennessee Department of Finance and Administration (Bureau of TennCare), the Federal Communications Commission, the United States Environmental Protection Agency, the United States Department of Health and Human Services - the Centers for Medicare and Medicaid Services and the United States Drug Enforcement Administration, Tennessee Health Service & Development Agency, Kentucky Department of Medicaid Services, Indiana Family and Social Services Administration, Tennessee Department of Labor and Welfare Development; (h) the Attorney General for the State of Tennessee; (i) the County of Sumner, Tennessee (the "County"); and (j) all parties that have requested personal notice pursuant to Bankruptcy Rule 2002. Such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion, the relief requested therein and all matters relating thereto, the Bidding Procedures, the Sale Hearing, the Sale Transaction or entry of this Order is or shall be required.

D.      As prescribed in the Bidding Procedures Order, notice of the Sale Motion and the Sale Hearing was published in (i) *The Tennessean* on May 21, 2010, (ii) *USA Today* on May 24, 2010, (iii) *The News Examiner* on May 26, 2010 and (iv) *American Hospital Association News* on May 31, 2010, as described in the affidavits of publication on file with the Court.

E.      As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.

F.      Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Assets. A reasonable opportunity to object or be heard with

7653/69444-001 Current/18819201v15

respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

G.     The Debtors have full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate the Sale Transaction.

H.     Approval of the Agreement and consummation of the Sale Transaction are in the best interests of the Debtors, their creditors, their estates, and other parties-in-interest.

I.     The Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan.

J.     The Agreement was negotiated, proposed and entered into by and among the Debtors and the Purchaser, without fraud or collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the avoidance of the Agreement or the consummation of the Sale Transaction, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

K.     The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Purchaser has at all times acted in good faith within the meaning of section 363(m) of the Bankruptcy Code.

L.     The terms and conditions of the Agreement are fair and reasonable.  The consideration provided by the Purchaser for the Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery

7653/69444-001 Current/18819201v15

for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

M.     The Purchaser is not and will not be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Debtors or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale Transaction.

N.     The Purchaser has provided adequate assurance of its future performance under the Assumed Contracts and Leases within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

O.     The Debtors have demonstrated that assuming and assigning the Assumed Contracts and Leases pursuant to the Agreement is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates, their creditors and parties-in-interest.

P.     Upon the transfer of each Assumed Contract or Lease, the Debtors are not and will not be in default in any of their obligations under the Assumed Contract or Lease with the possible exception of defaults identified in Section 365(b)(2) of the Bankruptcy Code, which defaults, if any, are null and void and without effect.

Q.     The Purchaser provided the Debtors with a $15,410,868.78 deposit (the "Deposit") in accordance with the Agreement, which Deposit is currently being held by an escrow agent pursuant to the Agreement.

R.     The Assets, including the real property upon which Sumner Regional Medical Center is located, constitute property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.  The transfer of the Assets to the Purchaser will be a legal, valid, and

effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtors in and to the Assets free and clear of all liens, claims, interests, obligations, rights and encumbrances, including any and all personal injury claims, except as otherwise specifically provided in the Agreement or in this Order. Except as specifically provided in the Agreement or in this Order, the Purchaser shall have no liability for any claims against the Debtors or their estates or any liabilities or obligation of the Debtors or their estates.

S.     The Debtors may sell the Assets free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, leases, charges, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement and adverse claims with respect to the Assets (collectively, "Liens"), except as provided in the Agreement or this Order, because one or more of the standards set forth in section 363(f)(1) - (5) has been satisfied with regard to each such Lien or adverse claim. Those non-Debtor parties with Liens or adverse claims in or with respect to the Assets who did not file a timely objection, or who withdrew their objections to the Sale Transaction or the Motion, are deemed to have consented to the sale of the Assets free and clear of those non-Debtor parties' interests in the Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

T.     Except as provided in this Order, the sale of the Assets in accordance with the Sale Transaction is free and clear of all encumbrances, interests and restrictions purportedly included in the Lease Termination Agreement between the County and the Debtors, dated January 27, 2004, recorded in Book 1934, Page 527, Register's Office for Sumner County, Tennessee (the "LTA"), and the Warranty Deed, executed by the County, dated January 27, 2004, recorded in Book 1934, Page 547, Register's Office for Sumner County, Tennessee, or

7

otherwise asserted by the County. Nothing in this Order shall impair the rights of any party in interest to object to any claim or other right or interest asserted by the County.

U. Section 363(h) of the Bankruptcy Code is not applicable to the Agreement or the Sale Transaction.

V. Except as otherwise set forth in the Agreement, the transfer of the Assets to the Purchaser (i) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject the Purchaser to any liability whatsoever with respect to the Debtors' debts, liabilities, contracts or other obligations (including without limitation, obligations, if any, owing any party to pending litigation with the Debtors), whether known unknown or hereinafter arising, other than those specifically assumed pursuant to the Agreement. In addition, the Purchaser is not and shall not be deemed to be a successor of the Debtors in any respect.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>General Provisions</u>

1. The Motion is hereby granted in its entirety.

2. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice.

7653/69444-001 Current/18819201v15

4.      The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, creditors, members, managers, and shareholders of any of the Debtors, the Purchaser and its officers, directors and members, all interested parties, and their respective successors and assigns, including, but not limited to, all non-Debtor parties asserting any Lien against the Debtors, their estates or the Assets.

<u>Approval of the Agreement</u>

5.      The Sale Transaction, and all of the terms and conditions and transactions contemplated by the Agreement are hereby authorized and approved in all respects pursuant to sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Agreement.

7.      The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

8.      In the event that Patient Partners, LLC, SST Community Health, L.L.C. or Wellness, Inc. (collectively, the "<u>Joint Ventures</u>") members or shareholders, as applicable, exercise their respective rights, if any, to purchase the Debtors' interest in the respective Joint Venture, the Debtors are authorized to execute and deliver, and empowered to perform under,

9

consummate, and implement any and all instruments and documents that may be reasonably necessary or desirable to implement such transaction and to take all further actions as may be necessary for the purpose of assigning, transferring, granting, conveying and conferring the Debtors' interests in the respective Joint Ventures.

9.     Upon the Closing, for the period from the Closing to September 30, 2010, and for each one year period thereafter running from October 1st through September 30th, ending on September 30, 2020, Purchaser shall provide medically necessary services to all Sumner County residents without regard to their ability to pay pursuant to its charity and indigent care policy. Presently, the policy would result in Purchaser providing up to 1% of Sumner Regional Health Center's annual net patient revenue as charity or indigent care.

<u>Transfer of the Assets</u>

10.     Except as otherwise provided in the Agreement or in this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets (and good and marketable title to such Assets) shall be transferred and assigned to the Purchaser free and clear of all Liens, including without limitation (i) any Indebtedness (as defined in the Agreement), lien or mortgage liens, (ii) any judgment lien or valid mechanic's or materialman's lien, (iii) any consensual liens or encumbrances agreed to by Sellers without Purchaser's consent on or after the date of the Agreement; (iv) any real estate Taxes (as defined in the Agreement) or special assessments due and payable prior to the Closing (as defined in the Agreement), subject to any adjustment thereof between the parties; and (v) any and all restrictions or interests in favor of the County together with all rights, benefits and claims in favor of, held by or otherwise inuring to the benefit of the County in and under such restrictions or otherwise contained in or arising in or under the Lease Termination Agreement of record in Book 1934, Page 527, Register's Office for Sumner County, Tennessee and in that Warranty Deed of record in Book 1934, Page 547,

7653/69444-001 Current/18819201v15

Register's Office for Sumner County, Tennessee, with all such Liens to attach to the net proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the respective Assets, subject to any claims and defenses, setoffs or rights of recoupment the Debtors may possess with respect thereto.

11. Upon the Closing, proceeds of the Sale Transaction shall be retained by the Debtors subject to further order of the Court. The first sentence of paragraph 13 of this Court's *"Final Order Regarding Use Of Cash Collateral And For Adequate Protection"* [docket no. 236](the "Cash Collateral Order") is modified to the extent necessary to conform to this Section 11; and pending further order of this Court, the Debtors shall not use proceeds from the Sale Transaction for Adequate Protection Payments (as defined in the Cash Collateral Order).

12. Except as otherwise provided in the Agreement or in this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, personal injury claimants, holding Liens (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, known or unknown) against, in or with respect to the Debtors and/or the Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Assets to the Purchaser, hereby are forever barred and estopped from asserting such Liens against the Purchaser and/or its affiliates, designees, assignees, successors, properties, or assets. Except as otherwise provided in the Agreement, effective upon the Closing, the Purchaser shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors or their estates.

7653/69444-001 Current/18819201v15

13.     The transfer of the Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer good and marketable title of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Assets, free and clear of all Liens, except as expressly stated as obligations of the Purchaser under the Agreement. Each non-Debtor party to any agreements with the Debtors that are not part of the Assets are hereby barred and estopped from asserting against the Purchaser any default claim or liability existing, accrued, arising or relating to any such agreements.

14.     After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against the Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of it affiliates, any tax or other amount alleged to be owing by the Debtors assessed prior to and payable after the Closing, except as otherwise specifically provided in the Agreement.

15.     The Purchaser shall not be liable for any of the Debtors' liabilities or obligations, except those expressly assumed in the Agreement or in this Order. The Purchaser is not and shall not be determined to be a successor to the Debtors or any of their affiliates, and the Purchaser shall have no successor liability or vicarious liability of any kind or character whatsoever with respect to (1) action taken or omission of action by the Debtors (or any of their representatives), (2) the Assets, (3) any pending or threatened litigation against or pertaining to the Debtors or the Assets, or (4) the Sale. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Assets, to:   (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

7653/69444-001 Current/18819201v15

16.     The Debtors are hereby authorized to assign all State and federal provider numbers, licenses and permits used in connection with the Assets, to the extent legally assignable, to the Purchaser in accordance with the terms of the Agreement and paragraph 27 of this Order.

<u>Assumption and Assignment of Assumed Contracts and Leases</u>

17.     Pursuant to section 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing and payment of the Cure Amount, if any, either to the respective counterparty or, in the event there is a dispute as to the proper Cure Amount, into a reserve established for such disputed Cure Amount, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts and Leases is hereby by approved.  The Debtors shall file a schedule of Assumed Contracts and Leases within 4 business days of the entry of this Order. The Debtors may amend such schedule through the Closing.

18.     The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, and subject to the terms of the Agreement and this Order, to (a) assume and assign to the Purchaser, effective upon the Closing of the Sales Transaction, the Assumed Contracts and Leases, and/or transfer, sell and deliver to the Purchaser all of the Debtors' rights, title and interest in and to the Assumed Contracts and Leases, free and clear of all Liens, except as provided in the Agreement, and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer to the Purchaser such Assumed Contracts and Leases.

19.     The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are satisfied with respect to the Assumed Contracts and Leases (subject to the "cure amount" procedures set forth herein) based on Purchaser's evidence of its financial condition and

13

whereithal presented at the Sale Hearing and without any other or further action by Purchaser, including, but not limited to, any other or further deposit.

20.    In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assumed Contracts and Leases to the Purchaser, (a) the Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assumed Contracts and Leases shall remain in full force and effect for the benefit of the Purchaser notwithstanding any provision in any such Assumed Contract or Lease or in applicable law that prohibits, restricts or limits in any way any such assignment or transfer and (b) no Assumed Contract or Lease may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

21.    Upon transfer of an Assumed Contract or Lease and payment of the Cure Amount, if any, either to the respective counterparty or, in the event there is a dispute as to the proper Cure Amount, into a reserve established for such disputed Cure Amount, each counterparty to such Assumed Contract or Lease shall be barred and prohibited from asserting against the Debtors' estates or their property any claims for defaults under the Assumed Contract or Lease (whether or not such claims have been included in filed proofs of claim) or from offsetting, seeking to offset, recoup, deduct or set-off any claims such party may have against the Debtors from any amounts that may be or may become due in the future to the Purchaser.

22.    In accordance with section 365(k) of the Bankruptcy Code, the Debtors' assumption and assignment of each Assumed Contract or Lease relieves the Debtors and their estates from any liability for any breach of such Assumed Contract or Lease occurring after such assumption and assignment.

14

7653/69444-001 Current/18819201v15

23.     Any party having the valid consent right with respect to the assumption or assignment of Assumed Contract or Lease that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

24.     All liquidated monetary defaults, claims or other obligations of the Debtors arising or accruing under each Assumed Contract and Lease prior to assumption of such Assumed Contract and Lease (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be determined in accordance with the Assumption and Assignment Procedures approved by the Bidding Procedures Order and promptly cured upon the Closing or, if later, upon the determination of the Cure Amount.

25.     Subject to the terms hereof with respect to Cure Amounts, all defaults or other obligations of the Debtors under the Assumed Contracts and Leases arising or accruing prior to the Closing have been cured or shall promptly be cured by the Debtors in accordance with the terms hereof such that the Purchaser shall have no liability or obligations with respect to any default or obligations arising or accruing under any Assumed Contract or Lease prior to the Closing, except to the extent expressly provided in the Agreement.  Each non-Debtor party to an Assumed Contract and Leases is forever barred and estopped from asserting against the Purchaser or its property or affiliates, any breach or default under any Assumed Contract or Lease, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing for such Assumed Contract or Lease or with regard to the assumption and assignment thereof pursuant to the Agreement or this Order.

7653/69444-001 Current/18819201v15

26.     Any provision in any Assumed Contract or Lease limiting the assignment of any Assumed Contract or Lease shall be null, void and of no force and effect in connection with the assignment to the Purchaser.

27.     Upon assignment of the Assumed Contracts and Leases to the Purchaser at the Closing, no default shall exist under any Assumed Contracts or Leases and no non-Debtor party to any Assumed Contract and Lease shall be permitted to declare a default by the Purchaser under such Assumed Contract and Lease or otherwise take action against the Purchaser as a result of the Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the Assumed Contract or Lease, including any failure to pay any amounts necessary to cure the Debtors' defaults thereunder.  Upon entry of this Order and assumption and assignment of the Assumed Contracts and Lease, the Purchaser shall be deemed in compliance with all terms and provisions of the Assumed Contracts and Leases.

28.     Upon the Closing, any and all Assumed Contracts, excluding Medicaid or Medicare provider agreements, shall be transferred free and clear of any and all claims of overpayment or any other breach or violation of any such agreements by the Debtor.  To the extent Medicaid and Medicare provider agreements and associated provider numbers are among the Assumed Contracts or Assets, upon Closing the Purchaser shall succeed to all rights and liabilities under such provider agreements and associated provider numbers, consistent with the applicable law of Medicare and Medicaid, including, but not limited to, the right to receive any and all Medicaid and Medicare underpayments due to the providers and liabilities of any and all Medicaid and Medicare, overpayments made to the providers, including all claims and defenses related thereto, regardless of when those underpayments and overpayments may have occurred. Notwithstanding the foregoing, as between the Debtors and the Purchaser, nothing herein shall

7653/69444-001 Current/18819201v15

affect the parties' respective rights set forth in the Agreement or operate to alter the categories of Assumed Liabilities and Excluded Liabilities set forth in the Agreement.

<u>Rejection of Contracts and Leases</u>

29.     Pursuant to section 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing and each counterparty's right to object to such rejection through July 9, 2010, the contracts and leases (the "<u>Rejected Agreements</u>") set forth on a schedule to be filed with the Court within 4 business days of entry of this Order are rejected as of the Closing. The Debtors shall serve this Order and the schedule of Rejected Agreements on all counterparties to the Rejected Agreements within 4 business days of entry of this Order.  To the extent any party objects and such objection is denied or overruled, the contract or lease at issue shall be deemed rejected as of Closing.  The Debtors may amend the schedule of Rejected Agreements through the Closing.  This Paragraph 29 does not include or apply to the LTA, which shall be dealt with in a separate order.

30.     Purchaser shall provide reasonable access to the Debtors and any counterparty to a Rejected Agreement for the purpose of returning to such counterparty any and all equipment and other items subject to a Rejected Agreement.

<u>Additional Provisions</u>

31.     Prior to or upon the Closing of the Sale Transaction, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Assets as such interests may have been recorded or may otherwise exist.

32.     Except as otherwise provided in the Agreement, this Order (a) shall be effective as a determination that, upon the Closing, all Liens existing with respect to the Debtors and/or the Assets prior to the Closing have been unconditionally released, discharged and terminated as

17

to the Purchaser and the Assets, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. All interests and Liens against the Assets as of the date of this Order shall forthwith, upon the occurrence of the Closing with respect to the Assets, be removed and stricken as against such Assets, without further order of the Court or act of any party.

33.     Each and every federal, state, and local governmental agency, unit, department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

34.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing interests with respect to the Debtors and/or the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors, the Assets or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser and/or the Debtors are hereby authorized to file, register, or otherwise record a copy of this Order, which, once filed, registered, or otherwise

7653/69444-001 Current/18819201v15

recorded, shall constitute conclusive evidence of the release of all Liens in, against or with respect to the Debtors and/or the Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

35.     Due, proper, timely, adequate, and sufficient notice of the Motion, Sale Hearing, and Sales Transaction, including without limitation, the assumption and assignment of the Assumed Contracts and Leases, has been provided, and such notice was good and sufficient, and appropriate under the circumstances, to afford all known and unknown creditors a reasonable opportunity to object or be heard with respect to the Motion, Sale Hearing and Sale Transaction, and thus provides sufficient basis for the Court to find, in the absence of objections, that the entry of this Order forever bars and estops all unknown or inchoate claims against the Assets or the Purchaser.

36.     All entities who are presently, or on the Closing may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser upon the Closing.

37.     This Court hereby retains jurisdiction to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser, (b) resolve any dispute, controversy or claim arising under or related to the Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

38. Nothing contained in any plan confirmed in these Chapter 11 cases or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

39. The consideration provided by the Purchaser for the Assets under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

40. The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

41. The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their creditors, their shareholders, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon any affected third parties notwithstanding any subsequent appointment of any trustee(s), examiner(s), or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee(s), examiner(s), or receiver(s).

42. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of

20

this Court that the Agreement and each and every provision, term and condition be authorized and approved in its entirety.

43. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties and disclosed to the Official Committee of Unsecured Creditors, the County, and Wells Fargo Bank National Association, not individually but as successor Master Trustee for the Bonds, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates. The Official Committee of Unsecured Creditors shall have the right to object on the grounds that there is a material adverse effect on the Debtors' estates.

44. Notwithstanding anything to the contrary in the Agreement or this Order, Debtor, as landlord, and Sumner Medical Plaza, L.L.C. ("SMP"), as tenant, are parties to that certain Ground Lease dated October 25, 1995, as amended (the "Ground Lease"). SMP, as landlord, and Debtor, as tenant, are parties to that Office Lease and that Beneficial Occupancy Agreement each dated October 25, 1995, as amended (collectively, the "Office Lease"). Debtor, SMP and Fifth Third Bank are parties to that Subordination, Non-Disturbance and Attornment Agreement dated November 23, 2004, of record in Record Book 2140, Page 283, Register's Office for Sumner County, Tennessee (the "SNDA"). SMP is the grantor in favor of Fifth Third Bank under that certain Tennessee Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement dated November 23, 2004, of record in Record Book 2140, Page 265, Register's Office for Sumner County, Tennessee (the "Deed of Trust"), which is the subject of that certain Subordination of Lien Agreement of record in Record Book 2140, Page 644, Register's Office for Sumner County, Tennessee, executed by Debtor and Fifth Third Bank (the "Subordination

21

Agreement"). Debtor and Purchaser have agreed that (i) the Assets are being sold subject to the Ground Lease and all encumbrances on the Ground Lease in favor of Fifth Third Bank, including the Deed of Trust, to which any claims of Debtor or its assigns remain subordinated under the Subordination Agreement; (ii) at Closing, the Ground Lease and the Office Lease shall be assumed and assigned subject to that Memorandum of Understanding dated March 25, 2010, between Debtor and SMP (the "MOU"); (iii) after assumption and assignment, Purchaser, SMP, and Fifth Third Bank shall work together in good faith to document and enter into an amendment of the Ground Lease and the Office Lease in accordance with the terms of the MOU, and (iv) at Closing, Purchaser shall assume the SNDA and the Subordination Agreement. Any dispute regarding the definitive documentation memorializing the post assumption and assignment amendment to the Ground Lease and the Office Lease shall resolved by this Court.

45. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be automatically stayed, but shall be effective and enforceable immediately upon the signing of this Order. The Debtors and the Purchaser may consummate the Agreement at any time after entry of this Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Sale Transaction without notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

46. 46. Notwithstanding anything else herein, the Sale Transaction contemplated hereby shall be subject to and conditioned upon the Tennessee Attorney General's review and decision whether to object to the proposed public benefit hospital conveyance transaction in accordance with the Public Benefit Hospital Sales and Conveyance Act of 2006, T.C.A. § 48-68-201 et seq. (the "Hospital Act") and the Tennessee Nonprofit Corporation Act, T.C.A. § 48-51-1-1 et seq. (the "Nonprofit Act"), as required by 11 USC § 363(d)(i). Nothing in this Order shall

7653/69444-001 Current/18819201v15

be construed to limit the powers and authority of the Tennessee Attorney General pursuant to the common law, the Hospital Act, the Nonprofit Act, or any other act adopted by the Tennessee General Assembly with respect to charitable trusts and charitable assets.

47.     The provisions of this Order are non-severable and mutually dependent.

<div style="border:1px solid black; text-align:center; font-weight:bold;">

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

</div>

7653/69444-001 Current/18819201v15

Prepared by:


/s/ Robert A. Guy, Jr.
FROST BROWN TODD LLC
Robert A. Guy, Jr., Esq., TN # 16715
424 Church Street, Suite 1600
Nashville, Tennessee 37219
Telephone: 615.251.5550
Facsimile: 615.251.5551
E-mail: bguy@fbtlaw.com

- and -

Ronald E. Gold, Esq.*
Joseph B. Wells, Esq.*
201 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com

- and -

PROSKAUER ROSE LLP
Jeff J. Marwil, Esq.*
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  312-962-3550

- and -

Jeffrey W. Levitan, Esq.*
Adam T. Berkowitz, Esq.*
1585 Broadway
New York, NY  10036-8299
Telephone:  212-969-3000

*Counsel for the Debtors and Debtors-In-Possession*

*Admitted *Pro Hac Vice*